CLOTHIER v. MILLER.

1. TAXATION—AUDITOR GENERAL—CANCELLATION OF SALE.
   The auditor general is authorized to cancel tax sales which are invalid because of defects in notice, process, or decree; and the sale is equally void whether he takes such action or not.

2. SAME.
   Whether or not a change or erasure made in the date of cancellation, as shown on the records in the office of the auditor general, was fraudulent, was not material, where the cancellation, in fact, took place before the issuance of deeds to the applicant for purchase, and was duly made under Act No. 169, Pub. Acts 1899 (1 How. Stat. [2d Ed.] § 1910).

3. SAME—NOTICE—LACHES.
   Having actual notice in 1900 of a tax title purchase against lands owned by them for taxes of 1887, and having instituted proceedings to secure possession by ejectment in 1906, complainants' bill to annul tax deeds filed in 1909 was barred by laches. 1 Comp. Laws, § 3959 (1 How. Stat. [2d Ed.] § 1911).

4. SAME—REDEMPTION—DECREE.
   Without some attempt to make a tender or payment into court

of the amount required to redeem, a decree denying the right of redemption was justified after more than six months from due service of notice pursuant to 1 Comp. Laws, §§ 3959, 3960, as amended (1 How. Stat. [2d Ed.] §§ 1911, 1912). The time for redemption is not extended by the commencement and continuation of a suit to determine the validity of the tax deeds.

Appeal from Chippewa; Steere, J. Submitted November 15, 1912. (Docket No. 26.) Decided January 3, 1913.

Bill by Caroline M. Clothier and another against David I. Miller and others for the annulment of certain tax deeds and other conveyances. From a decree for defendants, complainants appeal. Affirmed.

*D. W. Closser* (*Davidson, Hudson & Green,* of counsel), for complainants.

*Roger I. Wykes,* Attorney General (*Charles W. McGill* and *George L. Hauser,* of counsel), for defendant auditor general.

*John W. Shine,* for defendant Miller.

*E. S. B. Sutton,* for defendant Peninsula Bark & Lumber Co.

BROOKE, J. The opinion of the learned circuit judge who heard this cause very clearly sets forth the facts, and his legal conclusions thereon. It follows:

"This suit is instituted to set aside certain tax deeds and conveyances under them held by certain of the defendants on the following lands in Chippewa county: N. ¼ of the N. E. ¼, section 22, township 45 N., range 1 W., N. E. ¼ of N. W. ¼, section 22, township 45 N., range 1 W.; N. E. ¼ of S. E. ¼, section 22, township 45 N., range 1 W. The bill was filed in August, 1909, following two previous proceedings brought by complainants against the same tax titles. The first was a petition in chancery filed in 1906. After an answer had been filed by defendant Miller, the matter was continued from term to term for

over a year, and finally dismissed for want of prosecution. The second was a suit in ejectment brought in June, 1908. On the trial of that action, plaintiffs, who are complainants in this suit, introduced evidence against the validity of these same tax titles, and sought to defeat them. The action was apparently brought only for that purpose. On the trial, it was shown that the lands were wild and unoccupied. The tax titles were not found to be invalid, but subject to the redemption under the tax law; it being found that certain attempted notices of tax purchase served in 1900 were defective in failing to name the State and county in which the lands were located, and it was therefore held that the complainants were, at that time, entitled to possession as against the defendants.

"Following this decision, new notices were served by defendants, proof of service being filed with the county clerk March 23, 1909. No redemption was made or attempted by complainants, but this bill was filed the following August attacking the validity of the same tax titles on the ground that the auditor general erroneously computed the amount required by law to be paid for the same. It is undisputed that the purchaser paid to the auditor general's office an amount in excess of the sum required by law, but it is claimed that $7.60 was returned which should have been retained. These lands formerly belonged to Arthur Hill, a lumberman of Saginaw, and they had apparently been abandoned as not worth paying the taxes upon, in the same manner as were many other cut over lands purchased by lumbermen for the pine in early days. These lands have been delinquent for taxes for over 20 years. Truman R. French made application in 1900 to purchase these lands, together with others, at the auditor general's office. In connection with the application for the purchase, Mr. French deposited with the auditor general $491.10. Tax deeds were issued on this application, dated March 28, 1900, for the years 1891, 1892, 1893, and 1894, and as a condition of purchase the taxes were paid on the lands for the years 1887, 1890, and other years. On August 14, 1900, French had notice of purchase under tax sale served on Arthur Hill and Arthur Hill Company as the fee owners in the recorded chain of title. Proof of service of notice was filed June 13, 1904. These notices did not contain the name of the State or county in which the lands were situated and were held invalid as heretofore stated.

"The complainants claim title through certain deeds obtained from persons in whom the fee rested through a regular chain of title from the original purchaser. These deeds are quitclaim in form, and the consideration is nominal. The form of conveyance is such that whatever title complainants have acquired is subject to all defects, delinquencies, and laches which could be imputed to their grantors. As to the proper amount legally required to be paid the auditor general for the French purchase, we have three different computations presented and urged, varying according to the claims and theories of the parties in interest. On behalf of the auditor general, it is contended that the sum paid him was the exact amount required by law. In behalf of the defendant Miller, it is contended that the auditor general retained from the amount deposited with him $18 in excess of the legal amount, for interest and fees and unauthorized resales, he having no right to include in his petitions for certain years lands previously sold and then held by the State as State tax lands. The discrepancy of $7.60 between the amount retained by the auditor general and that contended for by complainants arises from the amount computed as due for the years 1887 and 1890, the same being computed by the auditor general on the basis of canceled sales and amount required to be paid as condition of purchase for other years, rather than a purchase for those years; while complainants contend that, the lands having been previously sold for those years and bid in by the State, no legal cancellation had been or could be made by the auditor general and that computation should be on the basis of a purchase rather than a payment of taxes, which would increase the amount required as contended for. The sale for the taxes of 1887 was absolutely void for lack of the dollar mark in the decree, a defect in the form of tax record furnished by the auditor general for that year, and practically uniform throughout the State. This defect was held jurisdictional in the case of *Millard* v. *Truax*, 99 Mich. 157 [58 N. W. 70], and has been repeatedly so treated in all our courts. As to that particular year, it has been expressly said by our Supreme Court:

" 'The land is in a class by itself, under the charge and control of the auditor general.'

"The sale for taxes of 1890 was void for defect in proof of publication and failure of the county treasurer to make

and file proper proof of sale. The sales for those two years were equally invalid, whether the auditor general so declared and canceled them or not. It is the opinion of this court that he had power to cancel them at any time for the reasons stated, and it is in proof that he did cancel them and the cancellation was determined upon some time before January 4, 1900.

"An examination of the State tax lands list No. 13, produced from the auditor general's office, and offered in evidence, shows that a change had been made on that record in the date of cancellation, it appearing as January 2, 1909, a date immediately prior to French's application to purchase. In behalf of complainants, this is dwelt upon as a serious matter, indicating some favoritism to French and possible dishonesty in making up the records. This changing of records, for which various theories, but no satisfactory reasons, are given, naturally weakens the authenticity of such records and lays them open to suspicion, but, in the view taken by the court of the legal aspect of this case, the alteration or change becomes immaterial from any point of view; it being satisfactorily shown that the cancellation took place before issuing the tax deeds. In making the cancellation, the auditor general was acting under authority of section 139 of the general tax law [Pub. Acts 1899, Act No. 169, 1 How. Stat. (2d Ed.) § 1910], and as he made the cancellation prior to issuing the deeds or receipts for sales of other years, the exact date is unimportant.

"The manifest object of section No. 139 was to provide ways to enforce the lien of the State and collect its revenues. That object would be more adequately and quickly accomplished by a cancellation followed by a speedy payment of the State lien for that year in connection with the purchase of tax titles of other years than by the slower and more certain process of cancellation, petition for sale, advertising, decree, and resale in the regular course of delinquent tax proceedings. The claim of laches urged by defendants has much force in the opinion of the court. The complainants, holding by quitclaim deeds, have imputed to them, not only their own delinquencies, but those of their grantors. These lands have been returned delinquent for taxes since 1887. The owner was presumed to know that his lands are annually taxed, to know when the taxes fall due, and the process and time of proceeding to enforce the State lien. No attempt or offer was ever

made since 1887 by the complainants or their grantors to pay these taxes, except in connection with the recent attempt to obtain cancellation of the French purchase. As early as 1900 complainants received actual notice of French's tax titles and of his purpose to perfect the same, although the notice was not in legal form to cut off redemption. As early as 1906, complainants' interests were in charge of an attorney, who was instituting proceedings in their behalf. Various letters were received from the auditor general stating the situation. They were fully advised, and had actual notice and knowledge touching these delinquent taxes and the tax titles for over three years before this suit was begun. The rule declared in *Hayward* v. *O'Connor*, 145 Mich. 52 [108 N. W. 366], seems to us to be in point in this case and to control. The bill of complaint will be dismissed, with costs."

We are satisfied that the learned circuit judge reached a correct conclusion as to the validity of the sale on the French application, and that complainants' bill was properly dismissed.

Upon the filing of the opinion in the court below, complainants presented a decree in line with the opinion, but containing the following clause:

"It is further ordered, adjudged, and decreed that complainants may redeem the lands described in said bill of complaint by depositing with the register in chancery of said court the amount required to redeem said lands, under the provisions of sections 140 and 141 of the general tax law, within 30 days from the date on which solicitor for complainants receives notice of the entry and filing of this decree, and not afterwards."

This decree the circuit judge refused to enter, but, instead, entered a decree dismissing complainants' bill without condition. In this court complainants urge that, if we find the French sale to be valid, we should enter a decree permitting complainants to secure a reconveyance of the property upon complying with the provisions of sections 140 and 141 of the general tax law (1 Comp. Laws, §§ 3959, 3960, 1 How. Stat. [2d Ed.] §§ 1911, 1912). It appears from the record that proof of service of the notice to

redeem was filed on March 23, 1909. By section 141 of the tax law, it is provided that:

"Any grantee or grantees * * * in the regular chain of title * * * shall be entitled to receive from the person so claiming under and by virtue of such tax deed, at any time within six months after the personal service of such notice or the date of mailing said notice by registered mail * * * a reconveyance of such interest in such lands so held, together with all certificates and tax receipts * * * upon payment to the owner of such tax deed or the register in chancery * * * the amount paid upon such purchase, together with 100 per cent, in addition thereto. * * * * *"

It is therefore apparent that complainants had a right upon compliance with this section to demand a reconveyance from defendants at any time prior to September 23, 1909. No attempt was made by complainants to secure such reconveyance within the time limited by the statute, but, instead of so doing, they commenced this suit on August 4, 1909. This was within the six months, during which the statute confers the right to secure a reconveyance. Section 142 of the tax law, as amended by Act 142 of the Public Acts of 1905, provides that the purchaser at the tax sale shall not enter into possession of the lands so purchased until six months after he has given notice to the parties in interest. This section contains the further provision:

"*Provided*, that if suit or other proceedings is commenced before the expiration of the said six months by the owner of the land so purchased, or one having a redeemable interest therein, to set aside the sale thereof, the purchaser under tax sale or his grantee shall not enter into possession of the land until the final determination of such suit or other proceeding."

It would seem to be the contention of complainants that the commencement of the suit to test the validity of the tax sale not only prevents the purchaser from taking possession during the pendency of the proceeding, but likewise operates to extend the period fixed by section 141

during which a reconveyance may be secured. To so hold would give the complainants the right to redeem more than three years after the expiration of the six months allowed by statute. The right to redeem under this section has been held to expire six months after the sheriff's return of service of the statutory notice has been filed. *Pike* v. *Richardson,* 136 Mich. 414 (99 N. W. 398); *Holmes* v. *Loud,* 149 Mich. 410 (112 N. W. 1109). In the case of *McDonald* v. *Miller,* 162 Mich. 81 (127 N. W. 262), a decree dismissing complainant's bill of complaint, but reserving the right of the complainant to obtain a reconveyance under the provisions of sections 140–143 of the general tax law within 30 days after the final determination of the cause, was affirmed by this court. The right of the circuit court to make such decree does not appear, however, to have been questioned in that case, and in this court the defendant asked that complainant be given the right to redeem. We can perceive no good reason for extending the scope of the statute by a strained construction, even if that were possible. Complainants could readily have protected their rights by paying into court the amount necessary to secure a reconveyance at the time suit was started. The fact that they did not do so would seem to indicate that at that time they did not care to place themselves in the position of being compelled to accept a reconveyance in case of the failure of their attack upon the validity of the French sale. If the situation has now changed, and they find, when too late, that it would be to their interest to secure a reconveyance under the statute, they cannot complain.

The decree is affirmed, without costs to either party.

MOORE, McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred. STEERE, C. J., and KUHN, J., did not sit.