ROUSSEAU *v.* RIIHINIEMI.

1. TAXATION — CONSTITUTIONAL LAW — NOTICE OF REDEMPTION —
   PAYMENT TO REGISTER IN CHANCERY—REDEMPTION—TAX TITLE.
   Where the purchaser of a tax title served a notice of re-
   demption in the form required by the statute at the time
   in force, which required the owner to make the payment
   of the redemption money to the register in chancery or to
   the tax title owner, the payment was properly made by de-
   positing the required amount with the register in chancery,
   although the provisions of the statute at the time the
   tax title was acquired did not authorize the method of
   redemption adopted:   The tax title owner had no vested
   right to the payment of the money directly to him; an
   amendment to the law authorizing the deposit with the
   register was constitutional and valid.

2. SAME — CONSTITUTIONAL LAW — CHANGE IN STATUTE — REDEMP-
   TION—VALIDITY.
   Upon the deposit of a sufficient sum of money with the
   register in chancery within the statutory limit the tax
   title immediately became ineffective whether the tax title
   owner did or did not give the proper notice to redeem.

3. SAME—AMOUNT OF PAYMENT—EQUITY—REDEMPTION.
   After the regular sale of lands for taxes and the lapse of
   time in which to redeem from the sale, the interest of
   the owner is lost and the State acquires absolute title to
   the property; in disposing of the interest thereby acquired
   the State is authorized to sell upon condition that the
   purchaser give notice to the owner, and, if he does not
   redeem, the tax title interest becomes an absolute title.
   Under Act No. 142, Pub. Acts 1905, the redemptioner is
   required to pay the fees of the sheriff for services to be
   computed as upon personal service of the declaration as
   commencement of suit or cost of publication of this notice.
   *Held*, that it is not reasonable to assume the cost of pub-
   lication of the notice and sheriff's fees are both to be com-
   puted as in case of serving a declaration;   that if there
   has been personal service of the notice the sheriff's fees
   are to be paid as upon personal service, and if service is
   not had, and notice is published, the cost of publication
   is required to be paid.

4. SAME—REDEMPTION—AMOUNT OF PAYMENT.

Where the statute defines the rights of the parties, the court cannot enlarge these rights, and the court below was in error in holding that the owner might pay, after suit was begun, a sum which he should have paid to perfect the right asserted in the suit.

5. SAME—NOTICE—AMOUNT OF PAYMENT.

The costs of attempted service of personal notice and incomplete substituted service of notice by publication were not proper items of expense to be charged against the owner, who had deposited with the register in chancery the amount shown in the certificate of the auditor general.

6. SAME—NOTICE—REGISTER IN CHANCERY—AMOUNT.

The owner of the original title is not required at his peril to ascertain whether the tax title claimant has incurred expense in an effort to serve the notice.

7. SAME—REDEMPTION FROM SALE—DETERMINATION OF AMOUNT.

Under section 140 of the general tax law, Act No. 270, Pub. Acts 1909 (1 How. Stat. [2d Ed.] § 1911), a redemptioner is entitled to reconveyance if he has paid the register in chancery the required sum amounting to one hundred per cent., in addition to the amount paid to the auditor general and $5.00 additional for each description.

Appeal from Ontonagon; Cooper, J. Submitted January 5, 1915. (Docket No. 6.) Decided June 14, 1915.

Bill by Edward Rousseau against Arvi Riihiniemi and others to redeem from a tax purchase. From a decree for complainant, defendant Riihiniemi appeals. Affirmed.

*Louis N. Legris* and *John Jones*, for complainant.
*M. J. Sherwood*, for defendant Riihiniemi.

Referring only to facts material to the discussion and decision of the questions raised by this appeal, they may be stated as follows:

The east half of the west half of a section of land in Ontonagon county had been sold for taxes and bid in by the State. The auditor general sold the interest

of the State and deeded it September 12, 1899, for the
taxes of the year 1894, requiring payment, also, of
the taxes for the years 1895 to 1898 inclusive; the
total paid by the purchaser being $140.75. By various
ous conveyances the title thus acquired passed to de-
fendant Riihiniemi in 1908; his interest, however,
dating from 1900, when he contracted to buy the land,
entered into possession thereof, and made improve-
ments thereon. The records showed that one Andrew
Chapton, residing in the same county, held the orig-
inal title. In 1909, steps were taken to serve the
statutory notice, and a notice in the form prescribed
by the statute then in force was duly made out and
delivered to the sheriff. He made a certificate, dated
April 7, 1909, of inability to find and serve Chapton,
and this notice and certificate was filed with the reg-
ister in chancery for Ontonagon county May 17, 1909.
In the certificate the fees of the sheriff are stated to
be $1.10. Thereafter defendant Riihiniemi published
the notice, its first appearance in the Ontonagon Her-
ald being in the issue of May 29, 1909, other dates of
publication of the notice being June 5, 12, 19, and 26,
1909. Proof of the publication of the notice was filed
with the register in chancery August 12, 1909, the
cost of publication being $6.30. Complainant found
Chapton, who, under date May 22, 1909, in the State
of Idaho, executed to him a deed of this and other
land, which was recorded in Ontonagon county June
15, 1909. Complainant deposited with the register
in chancery to secure reconveyance of the land $286.53
or $287.56 (both amounts are given in the testi-
mony), on August 6, 1909, and filed the bill in this
cause August 19, 1909.

In the bill an offer is made to pay any further sum
which in strict right or otherwise ought to be paid.
The answer, in which affirmative relief was asked,
was filed May 9, 1910, and alleges that an insufficient
sum was deposited with the register in chancery,

specifying the sheriff's fee and the fees for publication of the notice, and prayed that defendant's title be quieted. In the answer to the cross-bill, complainant denied that it was necessary to pay the sheriff's fee or to pay the cost of publication of the notice. It is further charged in the original bill that because of certain contracts relating to the land, entered into by defendant, complainant regards himself as unable to make a proper tender of the proper sum to any one, and that the land is valuable for timber, to restrain the cutting of which an injunction is necessary. A decree having passed for complainant, which required him to pay, also, all taxes paid by defendant and his grantors, the defendant, appealing, has presented and discussed two propositions, namely:

(1) Complainant had no right to pay the money to the register in chancery; (2) if he had that right, the sum deposited was too small, and therefore the right to a reconveyance was not secured.

Concerning these propositions, the learned trial judge, in his opinion, said:

"On August 6, 1909, the complainant deposited with the register in chancery the sum of $286.53 for the purpose of redeeming. There is some evidence in the case to indicate that $287.56 was the actual amount deposited. This did not include the fee of the sheriff for endeavoring to serve tax notice or cost of publication. Defendant claims that this was not a proper redemption: *First,* because there was no right to deposit with the register in chancery, but that the sum should have been paid direct to the defendant; *second,* there was not a sufficient amount deposited to comply with the statute.

"The publication of tax notice expressly gave the right to deposit money with the register in chancery. I am of the opinion that even if this publication had not done so, the complainant would have had this right under the tax law as it was at the time of publication; but, having expressly given the right in the published notice, defendant would necessarily be bar-

red from raising this objection, as by making the deposit it was in strict compliance with the published notice.

"The bill of complaint in this case was filed prior to the time of the expiration of the six months' notice given by the publication, and I am of the opinon that the court, having acquired jurisdiction prior to the time of the expiration of the six months, has the power and does extend to complainant the right to pay the additional amount necessary to comply with the notice. The decree will provide that the complainant pay this additional amount. The total amount which should have been deposited was $293.90 in order to redeem in compliance with the tax notice, and the complainant will pay the difference between that sum and $286.53."

OSTRANDER, J. (*after stating the facts*). The court properly overruled defendant's first contention. The payment was made at the place designated in the notice, and the form of the notice was the form required by the statute in force when the notice was given. The form of the notice which the statute required to be given by the tax title owner when he acquired the title was different from the one required by the statute in force when the notice was given. But the tax title owner had no vested right to have the money paid to him rather than to the register in chancery, and no additional duty was put upon him by the form, or the terms, of the notice required by the amended law. See *Weller* v. *Wheelock*, 155 Mich. 698 (118 N. W. 609); *Dolph* v. *Norton*, 158 Mich. 417 (123 N. W. 13). Compare, *Curry* v. *Backus*, 156 Mich. 342 (120 N. W. 796).

If a sufficient sum of money was deposited by the owner of the original title with the register in chancery within the time limited by the statute, the tax title immediately became ineffective. This is so whether the tax title owner did, or did not, give a proper notice, or whether he gave any notice.

Whether the tax title owner gave a proper notice becomes important only in cases where the owner of the original title has not deposited sufficient money, in sufficient time; the right being available until the proper notice is given. The deposit which was made in this case was made in time. It becomes important therefore to consider the contention that the proper amount was not deposited.

It will be remembered that when the deposit was made publication of the notice had not been completed. Section 140 of the tax law, as amended by Act No. 142, Pub. Acts 1905, provides for the giving of a notice by the tax title owner to certain persons, and, among other things, that, if the sheriff of the county where the lands are located shall return that after careful inquiry he is unable to ascertain the whereabouts or post office address of the grantee named in the last recorded deed (in this case, Chapton), then the notice shall be published once a week for four successive weeks in a newspaper, and due proof of publication by the affidavit of the printer or publisher of the paper shall be filed with the county clerk and shall be in lieu of personal service. The statute, and the form of notice therein given, demands payment, by the original title owner, of "all sums paid upon such purchase," *i. e.*, the purchase of the tax title, "together with one hundred per cent. additional thereto, and the fees of the sheriff for the service or cost of publication of this notice, to be computed as upon personal service of a declaration as commencement of suit, and the further sum of five dollars for each description without other additional cost or charges." The cost of the particular description, the east half of west half of the section, was $140.75. This sum doubled is $281.50. Adding $5 for one description of land makes the total $286.50. If the sum deposited was $287.56, as the testimony of the clerk

and the record entry on his book tend to prove, it still was not equal to the sum required to be paid if the fees of the sheriff as stated in his return was a proper charge; the proper sum, in such case, being $287.60. If, the publication of notice having been begun, the fee of the printer, or some of it, should have been paid, then the discrepancy is, of course, still greater.

The fact that a sufficient sum was not deposited is not controlling if it is true, as the learned trial judge held, that the court had power to permit the complainant to pay the balance after this suit was begun. This court has held, in substance and effect, that upon the regular sale of lands for taxes and the lapse of time to redeem from the sale the interest of the owner is lost, the State acquiring an absolute title to the land; that in disposing of the interest thus acquired the State may sell, and has in fact provided for selling, upon condition that the purchaser shall give a notice to certain persons who before the sale to the State possessed, actually or apparently, an interest in the land. If the persons so notified, or some of them, do not then redeem the land—acquire the interest of the tax title owner—that interest becomes complete. Since in all disputes concerning the observance of the condition, whether by the tax title owner or the owner of the original title, the title to real estate is involved, all parties in interest have been held to a strict compliance with the statute provisions. *Clothier* v. *Miller,* 173 Mich. 530 (139 N. W. 253); *Holmes* v. *Soule,* 180 Mich. 526 (147 N. W. 621); *Huron Land Co.* v. *Manufacturing Co.,* 183 Mich. 45 (148 N. W. 753); *Closser* v. *McBride,* 182 Mich. 594 (148 N. W. 756). Usually, as is true in the case before us, equitable jurisdiction is invoked and is assumed because, only because, complainant has complied with the statute, thereby acquiring rights which the court may compel defendant to respect. The statute rights of

the parties can be neither enlarged nor limited by the court. The trial court was in error in holding that complainant might pay, after suit was begun, a sum which he should have paid to perfect the right asserted in the suit.

This brings me to the consideration of some propositions presented by complainant, who claims that sufficient money was, in fact, deposited with the register in chancery. He says, first, that the sheriff's fee of $1.10, charged by him for the effort which showed inability to make personal service of the notice, is not a lawful fee and not one which he was required by the statute to pay. The argument made is that there is no provision of law for sheriff's fees if he fails to serve a notice, or a subpœna, or other process of a court. He says, further, that there was no substituted service of notice—and therefore no statute notice was served—until August 12, 1909, when proof of publication of the notice was filed in the office of the register in chancery. Six days before this he made his deposit. A third proposition is that, having put his deed upon record June 15, 1909, before any one had been served with notice, he became entitled to a notice. A fourth proposition is that the attempted substituted service of notice is of no effect because of the length of time which elapsed between the return of the sheriff and the publication of the notice.

Determination of the soundness of these propositions involves construction of the statute—an effort to ascertain the legislative purpose and intention. I have heretofore quoted the statute. It is ambiguous. The redemptioner must pay, or deposit, the "fees of the sheriff for the service * * * to be computed as upon personal service of a declaration as commencement of suit," "or cost of publication of this notice." It is not reasonable to assume that the cost

of publication of the notice and the fees of the sheriff
are both to be computed as upon personal service of
a declaration. The true meaning seems to be as indi-
cated, namely, if there has been personal service of
the notice the fees of the sheriff must be paid, com-
puted as upon personal service of a declaration, and
if no personal service is made, but the notice is pub-
lished, the cost of publication must be paid; in either
event, "without other additional cost or charges."

It is made evident by the facts before us that while
the attempt is being made to serve a notice, person-
ally, or by publication, the owner of the original title
may determine to redeem by depositing money
with the register in chancery. In such a case
must the owner of the original title, before mak-
ing his deposit, ascertain, at his peril, whether
the tax title owner has incurred expense in an
effort to serve the notice? I am of opinion, read-
ing all of the pertinent provisions of the law together,
that he is not under this obligation.

By section 141 of the tax law, as it stood in 1909,
the complainant was entitled to reconveyance if at any
time before such notice was given he paid to the reg-
ister in chancery on the certificate of the auditor gen-
eral all sums paid as a condition of the purchase of
the tax title, together with 100 per cent. additional
thereto, and the further sum of five dollars for each
description. "By such payment the tax title  *  *  *
shall become void and of no effect against the lands
so redeemed." This and other language employed
leads me to the conclusion stated. There is no pro-
vision, or rule, established by the tax law or other-
wise, for computing fees of a sheriff for attempting
to make personal service of a declaration as com-
mencement of suit. There is no method pointed out
for determining the cost of publishing a notice, once
or twice, or less than the required number of times.

And, in any event, the cost may be matter of private contract. Service of the notice may be made in two ways, personally, and, in certain cases, by publication. Until it is made, and in this case neither personal nor substituted service had been made, the complainant had the right to pay, as he did, the amount which he paid, relying, as he did, upon the certificate of the auditor general. This is the reasonable meaning of the statute. Any other would introduce confusion and uncertainty into a matter in which certainty is of the greatest importance. Manifestly, the person entitled to and desiring to secure the reconveyance knows whether he has been personally served with the notice, and must take notice of any return on file with the register which properly signifies that substituted service has been made. It is true that the return of the sheriff of inability to find the landowner may be contradicted (*Winters* v. *Cook*, 140 Mich. 483 [103 N. W. 869]) ; but this means only that the duty of good-faith effort is imposed upon the one required to give the notice. So far as is possible, the rights of the parties ought to be determinable and determined by the record, and this I think was the purpose of the legislature.

It follows that complainant made a sufficient deposit of money, a conclusion which makes discussion of other propositions unnecessary and requires that the decree should be affirmed.

BROOKE, C. J., and McALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.