HANEY *v.* MILLER.[1]

1. TAXATION—TAX SALES—PURCHASE BY THE STATE—TITLE ACQUIRED.

Under the tax laws then existing, a purchase by the State at a tax sale in 1893 resulted in the State obtaining a valid absolute title in fee.

2. SAME—STATE TAX LANDS—SALE BY STATE—TITLE ACQUIRED.

Upon a sale by the State of State tax lands in 1904, the purchaser obtained an absolute title subject to a condition to reconvey to the holder of the original title on his compliance with the prescribed conditions.

3. SAME—STATE TAX LANDS—SALE BY STATE—DEED—CONSTRUCTION.

A deed from the State to a purchaser of State tax lands is to receive no other construction than a deed between private persons; the grantee is entitled to the performance of the condition therein according to its exact terms, and the State has no power to impose other conditions, either by legislation or by judicial construction.

4. SAME—TAX SALES—REDEMPTION—STATUTES—EFFECT.

Sections 140 and 141 of the tax law, prescribing conditions

[1]Rehearing denied December 21, 1908.

154 MICH.—22.

upon which the landowner may require a reconveyance from the tax-title purchaser, were not intended to relieve him from the obligation to pay the taxes assessed against his land, or deprive the State of the opportunity to collect all taxes standing against the land which the State has acquired by its purchase.

5. SAME—STATE TAX LANDS— PURCHASE— CONSIDERATION— DUTY OF AUDITOR GENERAL.

Under section 84 of the tax law, requiring the auditor general to sell State tax lands to the original owner or anybody else, without preference, upon payment of the State's bid, with interest, together with the other taxes which have been returned to the auditor general "and remain a lien on such lands" at the time of the purchase, it is the duty of the auditor general to refuse to sell to any purchaser, original owner or speculator, without the payment of all taxes which have been returned and appear outstanding and unpaid or otherwise legally discharged, whether the same were originally legal or illegal, and whether or not the same could have originally been legally a "lien on the lands." McALVAY, BLAIR, and OSTRANDER, JJ., dissenting.

ON MOTION TO RETAX COSTS.

TAXATION— TAX SALES— SUIT TO SET ASIDE— COSTS— STATUTORY PROVISIONS.

Under section 144 of the tax law, Act No. 97, Pub. Acts 1899, a bill by a landowner against a tax-title purchaser and the auditor general to redeem on payment of less than the amount paid by the tax purchaser, on the ground that certain of the taxes were illegal and void, is in effect a bill to set aside the sale as to the taxes claimed to be illegal, upon which no costs are awarded.

Appeal from Allegan; Padgham, J. Submitted November 19, 1907. (Docket No. 62.) Decided July 1, 1908. Retaxation of costs granted October 1, 1908.

Bill by Elijah Haney against Archie T. Miller, James B. Bradley, auditor general, and Elmer E. Gable, county drain commissioner, to redeem from a sale of land for taxes, and to quiet title. From a decree dismissing the bill, complainant appeals. Affirmed.

*Taggart, Denison & Wilson,* for complainant.

*Brown & Farley,* for defendant Miller.

*John E. Bird,* Attorney General (*Charles W. McGill* and *George L. Hauser,* of counsel), for defendant Auditor General.

HOOKER, J. The land regarding which this cause arose is the northeast quarter of section 26, township 4 N., range 11 W. The west half of this quarter section was returned delinquent for a full line of taxes assessed thereon for the year 1885, together with reassessed drain taxes for 1881, 1882, 1883, and 1884. None of these were paid, and the land was bid in to the State in 1887. The entire quarter section was returned delinquent for a full line of taxes assessed thereon in the year 1891, and was bid in to the State at the annual sale in 1893. They were held as State tax lands without redemption until June 21, 1904, when they were sold as such to Archie Miller, who received the usual auditor general's deed dated August 16, 1904. Notice, under Act No. 229, Pub. Acts 1897, was duly served, when complainant, who owned the original title and was in possession, tendered the amount of the tax of 1891, with interest, costs, and penalties thereon, and demanded a reconveyance, claiming that prior taxes were void and refusing to pay them. In short, of $845.40, beside sheriff's fees, claimed to be due by the terms of the statute, complainant tendered about $90, and a reconveyance being refused, he filed this bill to redeem and remove a cloud upon his title.

As we understand complainant's claim, it is that the taxes assessed in 1885 were illegally assessed, unlawfully returned, and unlawfully sold; that the auditor general was not authorized to require their payment, and that if defendant saw fit to pay them, he did so at his peril, and must permit the sum so paid by him to be eliminated in the computation of the amount to be paid by him for a reconveyance under the statute. It appears to be admit-

ted that the drain tax for 1880 was reassessed in the years 1881, 1882, 1883, and 1884. The land was returned delinquent for the regular taxes of 1885 together with the reassessed drain taxes mentioned, when they were bid in to the State at the sale in 1887.

The drain proceedings were not produced, it being shown that the files and records were lost. A witness testified to his examination of the matter; and that the proceedings were void, and that he so informed complainant. He stated certain irregularities on which he based his opinion. It was also shown by oral testimony that contracts were never let and that the drain was never constructed. Upon this it was claimed that the assessment was void and was an unsubstantial foundation for subsequent proceedings. It was also claimed, we understand, that the law did not authorize the reassessment or the return of drain taxes, as it is claimed that the policy of the law then in force did not impose the duty of collection upon the auditor general, though it did require a return of delinquent drain taxes to him for the information of nonresident owners. It is contended, therefore, that the purchaser of the State's title paid at his peril the item of the drain tax, upon the grounds, *first*, that the proceedings were irregular and void; *second*, that the auditor general had no right to include such a tax, i e., a drain tax, in the price required under section 84 of the tax law. (1 Comp. Laws, § 3907, as amended by Act No. 262, Pub. Acts 1899.)

In our opinion, this contention is answered by the statutes. It is not denied that these lands were bid in to the State in 1887 and 1893. Whatever may be thought of the validity of the purchase in 1887, that in 1893 resulted in the State obtaining a valid absolute title in fee, as we have often held. See *Griffin* v. *Kennedy*, 148 Mich. 583. At the time the State took the title in 1893, sections 140 and 141, under which the complainant makes claim to any standing in this case, were not a part of the tax law, and he was as completely divested of title as though he

had conveyed to the State by deed. The State sold the land in 1904. As the law then stood, the State parted with the absolute title, but it was subject to a condition, and this condition inured to the benefit of this complainant, for it gave him a right to repurchase his lost land, or to redeem it from the purchaser, as has been sometimes said, and it is unimportant which term is used, for the substance is that the State sold its land subject to a condition to reconvey, not to it, but to its grantor, the original owner, when both the grantee and such grantor should severally perform the prescribed conditions. As has been recently said, this deed is to receive no other construction than a deed between private persons; the grantee is entitled to the performance of the condition according to its exact terms, and the State has no power to impose other conditions. So far as the injustice of the thing is concerned, there is no difference between the imposition of additional conditions against one or the other of the parties by legislation and the same thing by judicial construction, if such is clearly the effect. That is what we are asked to do. We are asked to say that, while the statute plainly limits the obligations of the State's grantee to convey to cases where the adverse party has become entitled to a reconveyance, has paid or tendered to him the purchase price with certain definitely specified costs, penalties, etc., he may be compelled to take less, and this upon the theory that if the auditor general has exceeded the requirements of the law as to the amounts charged, such excess may be disregarded, and the tax-title purchaser must lose such excess unless he can prevail upon the State to make him good, and itself lose such excess, which may be a morally just claim against him who would redeem, even though not legally enforceable by reason of technical objection, and notwithstanding the fact that sections 140 and 141 were not intended to relieve the original owner from such obligations or to deprive the State of the opportunity to collect all taxes standing against him which it had (in this case) acquired by its purchase, which pur-

chase had resulted in its obtaining the land in fee simple absolute, a legitimate thing for the State to attempt.

In its desire to relieve owners of land from oppression, the State has given this opportunity as a shield. It is now sought to use it as a sword to wring from the State something that it had secured, and, in my opinion, in tended to preserve.

Such a right cannot rest upon the language of section 141 (Act No. 226, Pub. Acts 1905) which requires from one who would repurchase, payment—

"To the owner of such tax deed or to the register in chancery of the county in which the lands are located, of the amount paid upon such purchase, together with one hundred per cent. in addition thereto, and the lawful fees or costs for such personal service, or substituted service, which fee shall be the same as provided by law for service of subpœnas or for orders of publication, or the cost of such service by registered mail, and the further sum of five dollars for each description, without additional cost or charge."

In the face of this unambiguous condition, without which the original owner would have no rights whatever, it is contended that the condition stated does not mean what it says, but means that a reconveyance must be made upon tender of what the purchaser ought to have paid, instead of what he did pay. The legislature might have made such a condition but did not.

What of plausibility there is to this claim seems to rest upon section 84, which gives authority to the auditor general to sell the State's absolute title to the original owner or anybody else *without preference*, upon payment of the amount of the State bid with interest, etc., "together with the other taxes *which have been returned to the auditor general* and remain a lien on such lands at the time of the purchase so made, with interest," etc. It is not said that the words "and remain a lien," etc., limit the amount that the auditor general should charge. Of this we may say that when we consider the evident intent of the State to require payment of all previous delinquencies, the regular-

ity of which could not usually be determined from the records,—and if they could, only by an expenditure for legal counsel of a sum exceeding the claim,—and the passage of said act at a time prior to the enactment of sections 140 and 141, it seems obvious that the legislature intended to sell these State tax lands only upon condition that its preexisting claim for taxes against the land sold, regular or irregular, valid or invalid, could be closed out at par. We can hardly imagine an intention to unsettle the title by subjecting the purchaser to unnecessary uncertainty, loss, and expense by making him take the title subject to the unnecessary obligation of litigating such a question as this, or of making it incumbent upon the auditor general to ascertain whether returned taxes have flaws in them, and deciding whether the State's lien has been lost or never acquired. We have an intimation that such cannot have been the intention, in the decision of *Munroe* v. *Winegar*, 128 Mich. 309. See, also, *Hall* v. *Miller*, 150 Mich. 300.

It is contended that these drain taxes were not a valid lien on the land, and therefore the purchaser was not compelled to pay them under that portion of section 84 obligating the purchaser to pay "the other taxes which have been returned to the auditor general and remain a lien on such lands." Another answer to this contention may be suggested, viz., the language above quoted does not apply to taxes which, like these drain taxes, had ripened into a title held by the State. The purchaser's obligation to pay such taxes arises, not from the above quoted language, but from the preceding language of section 84, reading as follows:

"Any person may purchase any State tax lands or any State bids, at any time except during the annual tax sale at the county treasurer's office, by paying therefor to the auditor general the amount for which the same was bid off to the State, with interest on the same at the rate of one per cent. per month."

This language construed, as it should be, in harmony

with the preceding sections (note particularly sections 70, 78, and 80) requires the purchaser to acquire all tax titles held by the State, and to pay the amount of all bids that the State had made therefor, and in this case it prevented the auditor general from selling to said purchaser the title acquired by the State for the nonpayment of taxes for the year 1891, unless he purchased the title acquired for the nonpayment of the tax of 1885, and the drain tax in question. Nor do we think this language authorized the auditor general to investigate and determine that any part of the tax for which the land was sold was invalid. He was required to exact "the amount for which the same was bid off to the State, with interest."

Again, the remedy through cancellation may possibly render redress to the repurchasing owner in proper cases, though we do not decide that question.

Recurring to section 84, we have seen that these drain taxes were returned, as required by law that they should be. Section 84 requires the payment of all "other taxes which have been returned to the auditor general, and remain a lien on such lands at the time of the purchase." Many taxes returned to the auditor general may be paid, others may be cancelled, others may be set aside by the courts, in all of which cases the auditor general would have notice. Doubtless this statute was intended to exclude such from the computation, but it does not follow that we must ascribe an intention so improbable as that urged, thereby creating an unnecessary confusion in the policy of the State to realize upon its tax claims,—a large proportion of which are open to the suspicion of irregularity,—and making the deficit arising from enforced collection larger than ever. We may take judicial notice of the fact that through ignorance, carelessness and design, many people do not pay their taxes, and there is reason to believe that the expense of attempting to collect them approaches in amount the total sum collected, and the claim is often made that it exceeds such collections. It goes without saying that the deficiency must be made up by

good citizens, who not only pay their own taxes, but are thus compelled to pay those of the delinquents as well. The tax department and legislature have been persistent in their efforts to better this condition, and they have been frustrated by their inability to obtain a strict enforcement of provisions apparently plain.

Courts are naturally and properly reluctant to deprive landowners of property by enforcing tax claims where there is a reasonable ground for avoiding it.

The statute, sections 140 and 141, was passed to relieve the taxpayer by giving him a last chance to save his land, it apparently being thought that, by requiring notice and giving an opportunity to repurchase, there would be little excuse for an owner losing his land through inattention.

It was the duty of the auditor general under section 84 to refuse a sale to *any purchaser*, whether original owner or a speculator, who should refuse to pay all taxes which had been returned and appeared on his books as outstanding and unpaid, undischarged, uncanceled, or in some other way legally invalidated taxes and entries.

The decree should be affirmed, with costs.

GRANT, C. J., and MONTGOMERY, MOORE, and CARPENTER, JJ., concurred with HOOKER, J.

McALVAY, J. The record shows that complainant is the owner and has been in possession of the land in dispute for more than 15 years; that said land, having been sold to the State, December 4, 1893, for the taxes of 1891, returned delinquent, was offered for sale as State tax land. May 4, 1904, but was not sold; that on August 16th following, it was sold by the State to defendant Miller; he was required to pay the sum of $382.45 for 1885 taxes which had been returned to the auditor general against the west half of said land, which, added to $37.75, the amount due for the taxes of 1891, amounted to $420.20; upon payment of which a deed was issued; that on December 13, 1904, Miller caused to be served upon complainant the statutory notice for reconveyance; that complainant, claiming that

the taxes for 1885 were void and no lien against said land, tendered defendant Miller the amount paid by him for the taxes of 1891 together with 100 per cent. and fees fixed by statute, and demanded a reconveyance, which was refused. Complainant then filed this bill of complaint, praying that the sale of said land for the taxes of 1885 be declared void and set aside, and said Miller be decreed to have acquired no rights thereunder, and that upon payment of the amount tendered he be decreed to convey the premises to complainant. He also asked for an injunction, pendente lite, and for general relief.

Defendant Miller and the auditor general answered the bill of complaint. The bill was taken as confessed by the other defendant who is drain commissioner of the county of Allegan, and who appears to be only a nominal party. The case was heard in open court. Defendants offered no proofs. After the hearing, the court made a decree denying relief to complainant, and dismissing his bill of complaint. Complainant has appealed.

The taxes called in the record and in this opinion taxes of 1885, the validity of which are in dispute, were in fact mostly reassessed ditch taxes for the years 1881, 1882, and 1883 for the Hooker Swamp drain, and for 1884 for the Shook drain; also a small sum for general taxes for 1885. These proceedings relative to the Hooker drain were had under the township drain law of 1875, as amended in 1877. It would be of no benefit to state in detail the provisions of this law. The Shook drain proceedings were under the law of 1881. The records of the proceedings to lay out both of these drains were not found or produced at the time of the trial and were shown to be lost. It was proved by the testimony of Mr. Denison that he saw them and they were examined by him with great care with special reference to the validity of these proceedings and from this testimony the court is satisfied that these records showed no lawful drains were ever laid out or established. The evidence also establishes that these drains were never dug, and no contracts were ever let for digging.

them. Under the township drain law of 1875, as amended, the sale of lands for nonpayment of drain taxes was made by the county treasurer, who gave deeds on such sales, subject to all general taxes, "and subordinate to State deeds for nonpayment of taxes." This law contained no provision for reassessment, and no provision for return to the auditor general. The drain law of 1885, which provided for reassessment of drain taxes assessed under the law of 1881, made no provision for the reassessment of taxes levied under the township drain law of 1875, as amended, but the law of 1881, which repealed all former acts, provided that all proceedings should be carried forward and completed under the acts mentioned, which included the law of 1875, as amended in 1877. The action, therefore, of the board of supervisors in ordering this Hooker drain tax reassessed and all proceedings as to the return to the auditor general and sale were without authority of law and void.

It is urged that, by reason of the limitation of the act of 1885, providing "that any drain that has been established for ten years shall be conclusively deemed to have been regularly established," complainant is estopped from questioning the legality of these drains. The evidence shows that the Hooker drain was never established legally on paper; that neither the place of beginning nor the terminal were fixed; that no width was given, which the law required. As already stated, these ditches were never dug or a contract let for digging. The statute refers to an actual drain established and dug on the face of earth. Apart from the question of the establishment of this Hooker drain, is the question of a reassessment, for which there was no provision of law whatever. The sale relied on by defendants included these taxes as reassessed. The necessary conclusion is that the Hooker drain taxes were invalid and that there was no valid sale of the land for these taxes reassessed in 1885. The law under which the Shook drain proceedings were had was repealed by the drain law of 1885, under the provisions of which these

drain taxes were authorized to be reassessed and such action was attempted by the board of supervisors. Such action, however, could not give validity to this drain tax if it was illegal. The undisputed evidence in the case is that no contract was ever let and no ditch was dug. The proceedings which were had, therefore, never amounted to the establishment of a drain, and never warranted the original assessment of $33.95 against this land. The reassessed tax was therefore invalid.

The sum of $2.83, general taxes assessed for 1885, appears to be valid. This was included in the amount $127.06 for which the sale was made in 1887. This court has repeatedly held that a sale is void if a part of the tax is invalid. *Case* v. *Dean*, 16 Mich. 12; 2 Cooley on Taxation (3d Ed.), p. 955; *Silsbee* v. *Stockle*, 44 Mich. 561; *Burroughs* v. *Goff*, 64 Mich. 464; *Boyce* v. *Sebring*, 66 Mich. 210.

It is urged that complainant by reason of his laches cannot dispute the validity of these taxes. He purchased the land in 1885 for which he received a warranty deed excepting "certain drain tax claims." He at once consulted Taggart & Wolcott, his attorneys, and was advised that these drain tax claims were invalid. He has been in possession continuously since his purchase, and the first claim or notice of claim or demand in regard to the matter is the notice of defendant Miller given under the tax law, and necessary prior to instituting proceedings for possession as purchaser under a tax deed. Complainant has never had his day in court to litigate the validity of these taxes. The sale was not a chancery sale as required under the present law. There is no reason why an owner in possession should institute proceedings against a claim which he is advised was invalid and which no person is asserting. *O'Connor* v. *Carpenter*, 144 Mich. 240. See, also, *G. F. Sanborn Co.* v. *Johnson*, 148 Mich., at page 409.

The main contention of the defense in this case, briefly stated, is that Miller, as purchaser of the title from the State for the 1891 tax, was, under section 84 of the general

tax law, required to pay the other taxes of 1885 returned to the auditor general, and that, to obtain a reconveyance, complainant is required to pay the amount paid by defendant on such purchase from the State, together with 100 per cent. and fees and charges provided by law. If this contention is correct, complainant has no standing in court.

Section 84 of the general tax law, under which payment of other taxes returned is required, reads:

"Any person may purchase any State tax lands * * * by paying therefor to the auditor general the amount for which the same was bid off to the State, with interest, * * * together with the other taxes which have been returned to the auditor general and remain a lien upon such lands at the time of the purchase so made, with the interest," etc.

The clear meaning of this statute is that the tax-title purchaser must pay the other taxes returned to the auditor general, and which remain a *valid* lien upon such lands at the time. While—except perhaps when appearing void upon the face of the record—the auditor general could not be called upon to determine as to whether the lien of the other taxes was valid or not, it certainly cannot be said that the legislative intent was that the owner of land who had been guilty of no laches, who had disregarded the provisions of no statute, and who had had no day in court, or opportunity to be heard upon the validity of the lien of such other taxes, should be compelled to pay without question a tax that never was a valid lien upon his land and which had never been asserted as such, because a tax-title purchaser had been required to pay the same as a condition of his purchase from the State. The reasoning upon which this contention is based is that the State, having acquired the title to the property, can attach such conditions as it sees fit, to be performed by the owner upon his redemption (repurchase) from the purchaser, and having done this the matter is foreclosed.

It is not necessary to discuss to what length the State might go in the imposition of terms for reconveyance. It has attached such condition, and the only possible construction of that condition is that it required the payment of other taxes which were a *valid* lien against the lands. Holding that only valid liens were included in the statute, it follows logically that the owner cannot be required to pay double the amount the purchaser paid for taxes not a valid lien upon his lands, unless he has waived all rights, or is estopped from asserting its invalidity.

The claim is made that such a construction of this statute is a wrong against the purchaser, and will tend to deter the collection of delinquent taxes. As far as the purchaser is concerned, he can lose nothing except the use of his money. If the tax is not a valid lien his payment is returned. When he buys he should use ordinary diligence, and slight examination will disclose fatal errors. This argument is not new. It has been made in every case by the tax-title purchaser where there was a probability that he would be held to have made a bad investment. Considering its effect upon the State, it is only necessary to say that the possibilities under the present law for similar conditions to occur are very small, and that, with the exercise of reasonable diligence and industry on the part of the multitude of employés in the tax collecting department, they would be eliminated entirely.

Complainant by his bill and proofs made out a case entitling him to equitable relief. The taxes of 1885 were not a valid lien upon this land at the time of defendant Miller's purchase. The sale for said taxes was a void sale. The entire amount thereof except $2.83 was absolutely void and complainant is entitled to have the same so decreed. All the parties in interest are before the court, and such decree can be now made as will dispose of the entire controversy. It will be unnecessary to order this amount of the 1885 assessment which is a valid tax to be returned for reassessment, but the same will be paid by complainant to defendant Miller with such interest if

any as may lawfully be added to the same if returned for reassessment. This amount together with the amount tendered by complainant to said defendant Miller will be decreed to be paid him by complainant, and thereupon said Miller to reconvey all his interest in the lands in question to complainant. The auditor general will be decreed to refund to defendant Miller the money paid on his purchase for such portion of the 1885 taxes as are by this opinion declared to be invalid. The decree of the circuit court should be reversed and a decree entered in this court in favor of complainant in accordance with this opinion, with costs of both courts against defendant Miller.

BLAIR and OSTRANDER, JJ., concurred with MC-ALVAY, J.

### ON MOTION FOR RETAXATION OF COSTS.

HOOKER, J. The bill was filed to remove a cloud from title to land, and to redeem from a tax sale. Drain taxes were assessed in the year 1880, and reassessed in 1881, 1882, 1883, and 1884, and the land was in 1885 returned delinquent for said taxes and for the regular taxes of 1885. It was bid in to the State for the same in 1887. In 1904 the lands were sold to defendant. Complainant, after notice served as required by section 140, Act No. 229, Pub. Acts 1897, seasonably tendered a sum, demanding a reconveyance, but this was refused. Thereupon the bill was filed claiming that the purchase was a cloud on complainant's title, and claiming a right to redeem. His bill was dismissed in the circuit court, without costs. Upon appeal, the decree was affirmed, with costs, which manifestly were limited to the costs of this court.

Defendant's counsel contended that he should have recovered costs below, and that section 144 of the tax law had no application to a case when the bill was filed for another purpose than to set aside for delinquent taxes. To this complainant's counsel replied that defendant could not raise the question as he had not appealed, and must

therefore be content to have the decree affirmed, and this was manifestly true. No allusion was made by counsel to the question of costs in this court, and neither of the opinions discussed the subject, though both awarded costs. Complainant now contends that defendant Miller is not entitled to costs of this court.

The suit was in effect a suit to set aside these drain taxes, and the auditor general was a necessary party under section 144, and he is not entitled to costs, and it may be that, were this all there is to the suit, defendant Miller could not be allowed costs, but it is not.

The case involves the further question of the complainant's right to redeem from the sale for the regular taxes of 1885, the claim of invalidity of which taxes and sale is inconsistent with the fact of complainant's tender. But as his right to repurchase depended on the sufficiency of the amount tendered, and this in turn depended on the validity of the purchase by the State, we are of the opinion that it is within the letter of the statute which precludes costs against either party in "all actions or proceedings instituted for the purpose of setting aside any sale or sales for delinquent taxes on lands."

The decree dismissing the bill will be amended by substituting the words "without costs" in place of the words "with costs."

GRANT, C. J., and BLAIR, MONTGOMERY, OSTRANDER, and McALVAY, JJ., concurred.