TRIANGLE LAND CO. v. CITY OF DETROIT.

1. TAXATION—RIGHTS OF PURCHASER OF STATE BID.

A State tax bid transferred to a private purchaser is in his hands in all respects like a title bid off by himself originally.

2. MUNICIPAL CORPORATIONS—STATE AGENCY—FIRE DEPARTMENT—LOCAL ACTIVITY.

In purchasing land from private owners for the purpose of erecting thereon a building to be used in connection with its fire department, a city was not acting as an agent of the State; said property being devoted exclusively to one of its local municipal activities, and not for the use of the people of the State at large.

3. TAXATION—MUNICIPAL CORPORATIONS—EXEMPTIONS.

Land purchased by the city of Detroit for purely municipal purposes after the assessment roll for the State and county

taxes had been finally reviewed and confirmed by the common council was subject to the tax thereafter levied for that year.

4. SAME — MUNICIPAL CORPORATIONS — EXEMPTIONS — DELINQUENT TAXES—RIGHTS OF OWNER.

In proceedings to enforce a valid tax title against a municipal corporation, there is no distinction, so far as rights under the sale for the delinquent taxes is concerned, between defendant and any other negligent owner.

5. SAME—NOTICE—PUBLICATION—SERVICE.

The published notice of the auditor general's petition, order of hearing, etc., were, under the law, equivalent to a personal service upon defendant of notice of all proceedings in and by order of the chancery court leading up to and including the public sale of lands at the annual tax sale for that year.

6. SAME—MUNICIPAL CORPORATIONS—DETROIT CHARTER—VACATING ASSESSMENT.

A resolution adopted on August 9, 1910, by the common council of the city of Detroit, acting under its charter (consecutive section 199, charter 1914-16), authorizing it "when it shall appear that any tax or assessment is unjust, or is based upon any property not owned by the person to whom it is assessed, * * * to repay the same out of the contingent fund, if collected, or if not collected, to vacate the assessment in whole or in part," purporting to cancel the taxes assessed on a piece of land for the year 1907, returned delinquent and bid off to the State, without disclosing the ground upon which they were canceled and without providing for their payment as the charter provides, was abortive and ineffectual.

7. SAME—NOTICE TO REDEEM—SUFFICIENCY.

A notice to redeem served upon the owner by the purchaser of a tax title based upon the delinquent State and county taxes for the years 1907 and 1908, stating truly the exact amount the purchaser was required to pay the auditor general as a condition of the purchase, specifying clearly years, amounts, and descriptions, was sufficient under the statute, although the taxes for the year 1908 were conceded to be void. FELLOWS, J., concurring in result, but holding that the sufficiency of the notice was not before the court.

8. SAME—RIGHTS OF PARTIES—STATUTES.

   In such proceedings the rights of the parties are purely statutory, and can be neither enlarged nor limited by the court.

   BROOKE and KUHN, JJ., dissenting.

Appeal from Wayne; Kendrick, J., presiding. Submitted October 16, 1917. (Docket No. 165.) Decided September 27, 1918. Rehearing denied January 31, 1919.

Petition by the Triangle Land Company against the city of Detroit and another for a writ of assistance. From a decree for defendants, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Albert DeCamp* and *Frederick E. DeCamp*, for plaintiff.

*Walter Barlow* (*Harry J. Dingeman*, of counsel), for defendants.

STEERE, J. Supplemental to a decree of the Wayne county circuit court in chancery rendered on petition of the auditor general for sale of lands delinquent for taxes in the year 1907, the Triangle Land Company filed this petition in the circuit court of Wayne county under sections 72 and 137 of the general tax law (sections 4069 and 4135, 1 Comp. Laws 1915), for a writ of assistance to obtain possession of a piece of land sold pursuant to such decree, located on South Lafayette boulevard, Detroit, described as lot 3 and the westerly one-half of lot 2 in block 55, Woodbridge Farm addition, as divided by commissioners in partition in 1864. The petition was denied by the trial court and appeal taken by plaintiff to this court for review.

The land in question was sold for delinquent taxes of both the years 1907 and 1908. It is conceded that

the property was not subject to taxation in 1908 and the deed given by the auditor general on the sale for that year is invalid, as a deed.   The facts are undisputed and have been fully stipulated by counsel.   Concisely stated, so far as material here they are as follows:   Prior to May 22, 1907, the property in question belonged to Maud Spencer Ledyard and Elizabeth Cass Goddard to whom it was assessed for taxes in the year 1907, the assessment roll being finally reviewed and confirmed by the common council of the city of Detroit on May 2, 1907.   On May 22, 1907, it was purchased by the city of Detroit from the above named owners who conveyed it to the city by a properly executed warranty deed of that date, which was recorded in the office of the register of deeds of Wayne county on July 20, 1908.   The city took possession immediately following the purchase and by its board of fire commissioners erected a building upon the premises during that year at a cost of about $20,000, for the accommodation of ladder company No. 12 of its fire department, and has since continued to occupy and use the property for that purpose.

The State and county taxes of the year 1907 assessed against said land remained unpaid and were returned delinquent by the county treasurer of Wayne county to the auditor general of the State in the regular course of proceedings under the tax law.   In manner and time prescribed by statute steps were taken by the auditor general to foreclose the lien of the State for delinquent taxes of 1907 and said land was included in his petition filed in the chancery court of Wayne county for decree of foreclosure and sale of lands delinquent for taxes for that year.   Pursuant to a decree rendered upon such petition the delinquent lands of 1907 were sold at the annual tax sale of May, 1910, and this property was bid in by the State.   Lot 3 was thereafter purchased from the State by Lillie B. DeCamp and the west half of lot

2 by the Triangle Land Co., appellant herein. Tax deeds were subsequently issued by the auditor general to each of them for the description purchased. The statutory notice of tax purchase and conditional right of owner to reconveyance was served by plaintiff on the city of Detroit, as the last owner in the recorded chain of title and occupant of the land, on January 16, 1912, and return of personal service by the sheriff was duly filed with the clerk of Wayne county. Lillie B. DeCamp had served such notice of her tax purchase on November 7, 1911, followed by filing the sheriff's return of personal service.

The common council of the city of Detroit at its session held on the 9th day of August, A. D. 1910, passed a resolution purporting to cancel the taxes assessed on said premises for the years of 1907 and 1908. The taxes were never repaid out of the contingent fund, no deposit was ever made by the city of Detroit with the register in chancery of Wayne county, or tender made to the owners of the tax deeds, nor attempt made in any manner to redeem and secure reconveyance. Over six months after filing with the county clerk proof of service of her notice upon said city, Lillie B. DeCamp deeded lot 3 to plaintiff. Over six months after both of these notices had been served upon the city and filed with the county clerk, and after lot 3 had been deeded to it by Lillie B. DeCamp, plaintiff made proper demand for possession of said premises, which was refused, and notice was then given that if such demand was not complied with proceedings would subsequently be commenced to obtain possession. In time thereafter to protect its rights against the applicable five years' statute of limitations plaintiff filed this petition.

It cannot be seriously questioned that upon their face all steps taken by the auditor general to foreclose the State's lien, if any existed, and by plaintiff to per-

fect its tax title by notice, etc., are in compliance with requirements of applicable provisions of the general tax law: chapter 83, 1 Comp. Laws 1915, beginning on page 1500. Defendant's position is that the land was not subject to taxation, that the State had no lien thereon for delinquent taxes to enforce and all proceedings to that end were idle, and of no validity.·

The trial court was of opinion that upon this petition and answer it was proper to and the court should "open for reconsideration and adjustment" the original decree rendered on petition of the auditor general directing sale of lands for the State and county general taxes for the year 1907, and being "satisfied that the decree would have been denied," as to the land in question, had the court been advised of the facts as shown in this proceeding, the court accordingly "adjudged and decreed that the original decree heretofore filed and entered herein on April 23, 1910, in so far as it relates to the order to sell the particular property in question herein, is annulled, set aside and held for naught, * * * That a sale of said lands for State and county taxes assessed thereon for the year 1907 be and the same hereby is denied," etc., concluding by declaring plaintiff's tax deeds void and its petition dismissed. Whatever may be said of the method by which the result was reached, plaintiff's petition can be said to have been denied on the indicated ground that the land was not subject to taxation for 1907 because owned by a municipality and devoted to a public purpose during a portion of that year, which is the ground urged by defendant here and was open to consideration there on plaintiff's petition and defendant's answer.

It is plaintiff's contention that this question is foreclosed in its favor by the rule stated in *Public Schools of City of Iron Mountain* v. *O'Connor*, 143 Mich. 35, which has been accepted as the settled law upon that

proposition, and since followed by assessing officers and State departments in assessment and cancellation of taxes. In that case the school board of Iron Mountain filed its petition against the tax title owner and auditor general of the State to set aside a sale of land delinquent for taxes for the year 1901, which it had purchased for school purposes on July 1st of that year and claimed was exempt from taxation, alleging that it had no knowledge of the levy of the tax or sale of the land for taxes until shortly before filing its petition. The land was assessable when the supervisor listed it upon his assessment roll in April, and when the board of review passed upon and approved the roll in May, 1901. The petition was denied because the land, having become liable, the taxes of that year so remained, although subsequently acquired for a purpose rendering it exempt, the court saying in part:

"There must be some definite period when the purchaser, whose property is generally exempt, must purchase it subject to the tax levied or to be levied thereon. It seems reasonable to hold that that time is when by law there is no power to correct the roll by adding property to or taking any from it."

Of this it is urged by counsel for defendant that the common council of Detroit, under special provision of its city charter, does have power to correct the roll and vacate any assessment or tax levy on property located within the city whenever it appears the same is unjust or illegal, which it did in this case by its resolution of August 9, 1910, canceling the taxes assessed on said premises for the years 1907 and 1908, acting under authority of consecutive section 199 of the Detroit city charter of 1914-16, p. 134 (section 63 of chapter 7), which provides:

"The said common council shall also have power, when it shall appear that any tax or assessment is unjust, or is based upon any property not owned by the

person to whom it is assessed, by a two-thirds vote of all the members elect, to repay the same out of the contingent fund, if collected, or if not collected, to vacate the assessment in whole or in part, in the manner and with like effect as is provided for in cases of illegal taxes and assessments in this chapter."

This chapter (No. 7 of the charter) provides how the common council shall be constituted and defines its powers and duties relative to municipal affairs, including various local improvements to be paid for by taxation, which the council is authorized to provide by specified proceedings. Following a section devoted to construction of sidewalks and manner of levying and collecting taxes to defray the necessary cost of the same, section 58 of the chapter authorizes the common council to—

"provide and ordain by ordinance, that whenever it shall appear that any taxes or assessments have been illegally assessed or collected, the common council may, by a vote of two-thirds of all members elected, direct and cause the amount so collected to be refunded out of the contingent fund, or in case it has not been collected, to vacate the assessment, and fix upon an amount, to be received in full of such tax or assessment, and no such action on the part of the council, under such ordinance, shall in any way affect or invalidate any other tax or assessment assessed, levied or collected in said city."

Whether it appeared to the council that those taxes were unjust, or when assessed were based upon property not owned by the person to whom it was assessed, over three years before this resolution was adopted, is not disclosed; but they are shown to have been spread on an assessment roll passed upon and approved by the common council acting as a board of review, and, in the regular course of proceedings which the city itself had initiated, this land was returned delinquent for taxes, had been regularly advertised, offered at the

annual tax sale and bid in by the State for such delinquent taxes at the time this resolution was passed. The State purchased the land and held it in like manner as an individual. A State tax bid transferred to a private purchaser is in his hands in all respects like a title bid off by himself originally. Section 4082, 1 Comp. Laws 1915; *Auditor General* v. *Board of Sup'rs of Monroe Co.*, 36 Mich. 70; *Haney* v. *Miller*, 154 Mich. 337. In any aspect of the question the delinquent tax had passed into the hands of the State authorities, the common council had no further control over these tax proceedings at that time and the resolution purporting to cancel those State and county taxes was of no validity.

It is further claimed that plaintiff's tax deeds are void under the ruling of this court in *Graham* v. *City of Detroit*, 174 Mich. 538 (44 L. R. A. [N. S.] 836), because they cover lands which had been acquired by the municipality and were in use for a public purpose before they had been purchased for delinquent taxes from the State. The *Graham Case* was an action in ejectment against the city for a portion of a public street, the easements for which had been acquired for highway purposes by condemnation proceedings. Defendant had given notice under its plea of the general issue that it did not own or claim to own the lands in question, and asserted they were in use as part of a highway for public travel under an easement acquired for that purpose, and the right of the public to so use them could not be determined in ejectment. It was held that the municipality neither owned the easements nor held the property in exclusive possession, the court saying:

"The easement in the lands in question for the purposes of public travel belonged to the State at the time it purchased such lands at the tax sales. A municipality in its control of these highways acts for the

State, and has no right to the possession or use of these easements other than the public generally. It takes the burden of maintaining such easements fit for public travel. *Lynch* v. *Town of Rutland,* 66 Vt. 573 (29 Atl. 1015). These easements belong to the State, and were in use as public highways at the time they were bid in to the State for delinquent taxes."

And it was held the auditor general could not issue deeds in the name of the State for lands in which the State had then acquired easements for public use as a part of its highways devoted to public travel.

The obstacle to applying that rule in the instant case is that the State had no right, title, easement, or interest in, or control over, these lands. The city had bought them from private owners for municipal purposes, and was not acting for the State in its exclusive possession and control of the property for a municipal purpose. To hold that the city was acting as an agent of the State in the ownership and control of property devoted exclusively to one of its local municipal activities would be to overturn the doctrine for which cities have strenuously and successfully contended under the ægis of home rule and right of local self-government since early in the history of the State. Education and highways for the use of the people of the State at large are held to be matters of general State concern and control, while the fire departments and other purely local functions of municipalities are not. The distinction is pointed out and the rule well settled in *City of Detroit* v. *Corey,* 9 Mich. 165 (80 Am. Dec. 78) ; *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103) ; *Board of Park Commissioners* v. *Detroit Common Council,* 28 Mich. 228 (15 Am. Rep. 202) ; *Town of Milwaukee* v. *City of Milwaukee,* 12 Wis. 93; *Davidson* v. *Hine,* 151 Mich. 294 (15 L. R. A. [N. S.] 575, 123 Am. St. Rep. 267, 14 Ann. Cas 352) ; *Simpson* v. *Paddock,* 195 Mich. 581, and cases there cited.

So far as the city's rights under the sale of these

lands for delinquent State and county taxes is concerned, there is no legal distinction in this controversy between defendant and any other negligent owner. The published notice of the auditor general's petition, order of hearing, etc., were, under the law, equivalent to a personal service upon it of notice of all proceedings in and by order of the chancery court leading up to and including the public sale of these lands at the annual tax sale for that year. The abortive attempt of the common council to wipe out those State and county delinquent taxes, which were beyond its control, but indicates it had actual notice as early as August 9, 1910. The lands could then have been redeemed and the whole matter adjusted by simply paying the tax of 1907 to the county treasurer, and applying to the auditor general for cancellation of those of 1908. In the prescribed course of proceedings when taxes are returned delinquent, as done by the county treasurer in this case, the property was sold to satisfy the taxes and deeds therefor given. The matter was again called to the attention of the city by personal notice of the outstanding tax titles and of its right to redeem and obtain reconveyance on payment of the taxes and prescribed penalty within six months as the law provides. This added provision in the law for collecting the revenue of the State was passed for the benefit of the defaulting taxpayer. Following all prior demands, opportunities and legal proceedings to induce payment, it again offers him relief "by giving him a last chance to save his land, it apparently being thought that, by requiring notice and giving an opportunity to repurchase, there would be little excuse for an owner losing his land through inattention." *Haney* v. *Miller*, 154 Mich. 338. The provisions of the tax law as to the rights and duties of the respective parties in interest after a valid tax sale have been fully discussed and construed in the following cases, and oth-

ers to which they refer:   *Ball* v. *Ridge Copper Co.*, 118 Mich. 7; *Gustin* v. *Fitzpatrick*, 182 Mich. 640; *Huron Land Co.* v. *Manufacturing Co.*, 183 Mich. 45; *Rousseau* v. *Rühiniemi*, 186 Mich. 653, and *Haney* v. *Miller*, *supra.*

No steps were taken by the city to secure a determination of any legal questions which personal service of notice to redeem from a tax deed from the auditor general upon its property suggested, no offer or tender of payment was made and the notices were ignored during the time for reconveyance, and until this petition was filed.   The contention that this neglect puts defendant in a more advantageous position than the fee owner in the *Iron Mountain Case* because there the question of loss of public property was not involved is not tenable.   It was involved, and such loss inevitable, had that municipality treated the notice as in the instant case; otherwise the decision is a nullity and it was folly for Iron Mountain to act in the matter either by litigation or redemption, when by its doing nothing until the expiration of the six months' notice to redeem had expired the tax deed would automatically become a nullity and the tax lien, to collect which the land was sold by the State, liquidated.

In a supplemental brief filed after this case was submitted counsel raises the point that the notice to redeem served upon it was invalid because it included the amount paid the auditor general for the taxes of 1908 which were concededly illegal, reference being made to the notice to redeem which is among the exhibits in the case.   The notice contains, separately stated, the amount for each year, showing plainly the description of the land upon which it was paid.

As to this proposition, it is expressly stipulated in the record that "notice of its (petitioner's) tax title in conformance with the provisions of Act No. 229 of the Public Acts of 1897 and acts amendatory" was

served on defendant by the sheriff of Wayne county and his return duly filed with the county clerk. No question was raised as to its sufficiency in defendant's pleadings, before the trial court so far as shown, nor in the former briefs or oral argument in this court. Apparently in reliance upon the stipulation, it is not discussed in plaintiff's brief. But, even conceding that there was no waiver of the question, and the stipulation is a "scrap of paper," we are not impressed that this belated objection is tenable. This is a purchase from the auditor general of State tax land for delinquent taxes of previous years, made under section 84 of the tax laws (section 4082, 1 Comp. Laws 1915), and it is not questioned that the notice states truly the exact amount the purchaser was required to pay the auditor general as a condition of the purchase, specifying clearly years, amounts and descriptions. By section 141 of the tax laws (section 4139, 1 Comp. Laws 1915), the fee owner desiring to redeem shall have a right to do so "by paying to the purchaser, or his grantee, or to the register in chancery of the county in which the lands lie, on certificate of the auditor general or his deputy, all sums paid as a condition of such purchase," together with the statutory additions thereto imposed as a condition for reconveyance. The notice given in this case fully advises what amount is required to redeem in accordance with the provision of the statute. The requirements of those decisions cited by counsel, holding that the notice must specify the exact amounts paid by the purchaser of the tax title with years, descriptions, and amounts for each year on each description, and that a demand for any excess invalidates the notice, have not been violated. This subject has been somewhat discussed in *Cheever* v. *Flint Land Co.*, 134 Mich. 604, where it is held that a purchaser of State tax lands under section 84 is compelled to pay as a condition of purchase a

claim held by the State under a sale which, at the time of purchase, was subject to redemption. In *Haney* v. *Miller, supra*, it was claimed that the taxes assessed for a certain year were illegal, unlawfully returned and sold, and the auditor general was therefore not authorized to require their payment as a condition of purchase; that if the defendant saw fit to comply with such unlawful requirement and paid them, he did so at his peril and must remit the sum so paid by him, to be eliminated in the computation of the amount he was entitled to receive under the statute. Holding that this claim was not well founded the court, in construing section 84 with related provisions of the tax law, said in part:

"It seems obvious that the legislature intended to sell these State tax lands only upon condition that its pre-existing claim for taxes against the land sold, regular or irregular, valid or invalid, could be closed out at par."

From the foregoing we are constrained to conclude that plaintiff has shown a compliance with requirements of the tax law establishing legal rights which it is entitled to maintain by this proceeding as the statute authorizes. The rights of these parties are purely statutory, and, as said in *Rousseau* v. *Riihini-emi, supra,* "can be neither enlarged nor limited by the court."

The decree of the trial court is therefore reversed, with costs, and the case remanded for such further proceedings as may be in harmony with this opinion.

OSTRANDER, C. J., and BIRD, MOORE, and STONE, JJ., concurred with STEERE, J.

FELLOWS, J. I agree with the result reached by Justice STEERE. I do not think the question of the sufficiency of the notice is before us. *South Arm Lumber Co.* v. *Silverthorne,* 138 Mich. 465; *Lake Erie Land Co.* v. *Chilinski,* 197 Mich. 214.

Brooke, J. (*dissenting*). I find myself unable to agree with the conclusion reached by my Brother Steere in this case. The contention is made broadly on behalf of the defendant that the tax deeds were illegally issued by the auditor general of the State for the reason that the city of Detroit, the owner of the premises described in the deeds, is a municipality of the State and therefore a State agency. For this reason the auditor general is without authority to sell the property of the city, devoted by it to municipal purposes, for taxes due the State. The principle involved is stated in 37 Cyc. p. 878, as follows:

"The necessary independence of the Federal and State governments imposes a limitation upon the taxing power of each. Neither can so exercise its own power of taxation as to curtail the rightful powers of the other, or interfere with the free discharge of its constitutional functions, or obstruct, embarrass, or nullify its legitimate operations, or destroy the means or agencies employed by it in the exercise of those powers and functions." Citing cases in note 42.

Further, 37 Cyc. p. 883:

"Nor, as in the case of public property generally, will the State itself impose taxes upon its own public or governmental agencies or instrumentalities, or those of its municipal corporations, or a municipality tax such agencies or instrumentalities of a State."

Again, 37 Cyc. p. 876:

"The property of a municipal corporation which is thus exempt from taxation is such as is owned and held by it in its capacity as an integral part of the State government, or which is necessary to enable it to administer those powers of local self-government, or to perform those public functions, which have been intrusted to its care. This will include property held and used for city halls, court houses, jails, public schools, and the like, and engine houses and other property used by the fire department, public ferries, wharves or bridges, public markets, public parks, poor-

houses, pauper cemeteries and other property devoted exclusively to public charities, public dispensaries, and generally all such property as is used for legitimate municipal purposes." Cases cited in note 20.

My Brother holds that the case of *Public Schools of City of Iron Mountain* v. *O'Connor,* 143 Mich. 35, controls the case at bar. I am of the contrary opinion. This court has consistently held that education is not a matter of local concern but belongs to the State at large. *Board of Education* v. *City of Detroit,* 30 Mich. 505, *Attorney General* v. *Thompson,* 168 Mich. 511, and *Collins* v. *City of Detroit,* 195 Mich. 330. An examination of the briefs and records in that case will show that the question of the power of the State to sell the property of one of its municipal agencies for taxes was not presented to this court. In that case the question of the loss of the public school property of the city of Iron Mountain to the school district was not involved. It appears that the case was argued and submitted in this court on February 8, 1906, and was decided on February 13, 1906. Proof of service of the notice to redeem the school property from the tax sale was filed on August 17, 1905, and the redemption period expired six months later, on February 17, 1906. The brief of counsel for the public schools called the attention of the court to necessity of a decision before February 17, 1906, the date of the expiration of the time in which the school property might be redeemed from the tax sale. Four days of the redemption period remained after the case was decided by this court. There was, therefore, before the court no question of the forfeiture of public property involved.

In the stipulation of facts counsel for defendant agree that the redemption notice served on the defendant city was served in conformance with the provisions of the statute, but as a part of the stipulation the notice of redemption is referred to as an exhibit and it

seems to me in a case of this kind it should be open to scrutiny. That notice demands from the defendant payment of the taxes for the year 1908 as well as for the year 1907. The city of Detroit became the owner of the property on May 22, 1907, and it was thereafter exempt from all taxation, 1 Comp. Laws 1915, § 4001, subd. 3. The statute requires the redemption notice to contain a description of the property sold for taxes, and the amount paid therefor by the purchaser as well as the year in which the taxes were assessed against the property; 1 Comp. Laws 1915, § 4138. In my opinion, by including in the redemption notice, taxes for the year 1908 when the property was clearly nontaxable, the plaintiff made an illegal exaction against the defendant city. This court has consistently held that the redemption notice be required to inform the owner of the premises of the amount he will be required to pay in order to effect redemption; that it be clear and explicit, and disclose the exact amount legally due to the tax title purchaser, otherwise the notice is held to be invalid. *John Duncan Land & Mining Co.* v. *Rusch,* 145 Mich. 1; *Teal Lake Iron Mining Co.* v. *Olds,* 178 Mich. 335, and *Closser* v. *McBride,* 182 Mich. 594. While this defect in the notice of redemption is, under the authorities, fatal to plaintiff's contention, if open to review under the stipulation, and I hold it to be so reviewable, the broader and more important question involved is the power of the State to sell for taxes due it property used for municipal purposes by one of its own municipal agencies. This should not be, and I think under the authorities cited may not be, permitted.

The decree should be affirmed.

KUHN, J., concurred with BROOKE, J.