# City of New Castle v. Lawrence County et al.

*Robert White* and *Gilbert E. Long,* for complainant.
*William McElwee, Jr.,* for respondents.

BRAHAM, P. J., March 10, 1948.—This is a bill in equity to cancel certain tax sales to Lawrence County of real estate belonging to the City of New Castle; to cancel certain sales of tax lands made by the County of Lawrence to certain individuals, and to enjoin further taxing or selling at tax sale of lands belonging to the city. The case is before the court on preliminary objections to the bill. A default judgment was obtained by the county but the judgment was opened by the court for the reasons set out in the opinion reported in 6 Lawrence Law Journal 17.

Joseph F. Bloise was originally named as defendant. He was alleged to have bought certain of the lands from the county. The case as to him has been discontinued by plaintiff. Victor Cubellis and Lloyd M. Thompson have been added as parties defendant upon petition of plaintiff alleging that the county in 1946 conveyed certain of the lots to them.

Since the case is before us on preliminary objections by way of demurrer the facts must be gathered from the bill of complaint. It thus appears that on February 10, 1937, the Harmony Company conveyed to the City of New Castle six parcels of land on Taylor Street in New Castle. Each of these lands was subject to a tax lien to the County of Lawrence and the Lawrence County Institution District and a further tax lien to the School District of Lawrence County (presumably the School District of the City of New Castle). These liens had been kept alive by appropriate revivals until this bill was filed on May 27, 1946. No demand was ever made upon the city to pay the tax liens and none was ever paid. The city bought the land for a possible widening of Taylor Street. Temporarily the land was used as a dump and part of it for a toolhouse.

From 1937 to 1940 the county and institution district continued to assess and levy taxes on the lands but since 1941 they have been placed on the exempt list by said bodies. The school district has assessed taxes on said lands until the present time.

In 1940 the Treasurer of Lawrence County advertised the lands for sale for taxes and on May 1, 1940, sold all six parcels to the Commissioners of Lawrence County. On June 13, 1945, upon petition of the Commissioners of Lawrence County the second parcel was sold by order of court to Joseph F. Bloise; at sometime in 1946 there was a like sale of another parcel to Victor Cubellis and another to Lloyd M. Thompson.

The city relies upon the principles that taxes may not be levied by one municipal subdivision upon property of another which is used for public purposes and that public lands may not be sold at tax sale at the suit of one governmental body against another. The county relies upon the notice and opportunity for protest afforded by the statute under which the tax sale was held, upon the right to redemption enjoyed but

not exercised by plaintiff and upon the notice required to be given by the city when the lands were sold by the county.

Victor Cubellis, added defendant, sets out as his grounds of preliminary objection plaintiff's laches in failing to make timely objection and protest, as alleged by the county, and further the existence of an adequate remedy under Pa. R. C. P. 1061 relating to the action to quiet title and the lack of title in plaintiff since the deeds to plaintiff from the Harmony Company were only quitclaim deeds.

The beginning point in this case is the principle refusing to any State municipal subdivision the right to tax or to sell for taxes any property of another like governmental body used for public purposes: 51 Am. Jur. 894, par. 1023; Directors of the Poor v. School Directors, 42 Pa. 21. Such property can only be taxed if the legislative intent to do so is clear: Philadelphia v. Barber, 160 Pa. 123, 128. The principle applies only when property is used for public purposes: Pittsburgh School District v. Allegheny County, 347 Pa. 101. In the case before us the land was acquired for a public purpose, namely, the widening of a street. The State Highway Department had control of the improvement until the department decided part of the lands were used for a toolhouse and part for a dump. The public nature of these purposes cannot be controverted. Hence taxes levied upon the lands in question after the city took title were clearly unauthorized under the facts as alleged by plaintiff and the rule of Pittsburgh School District v. Allegheny County, supra.

The collectibility of the taxes which were a lien on the lands when the city received the quitclaim deed presents a more difficult question. The general rule is that property acquired by a municipality for public purposes cannot be sold for taxes levied prior to the acquisition: 51 Am. Jur. 894; Annotation 158 A. L. R.

563. This is particularly true if the lien does not attach until after the acquisition: Ann. L. R. A. 1915-c 130. The principle is not, however, completely established where the acquisition follows attachment of the lien. On this point compare Triangle Land Co. v. City of Detroit, 204 Mich. 442, 170 N. W. 549, 2 A. L. R. 1526 with Gachet v. City of New Orleans, 52 La. Ann. 813, 27 So. 348. The point does not seem to have been decided in Pennsylvania.

An illuminating case is United States v. Alabama, 313 U. S. 274-283, 85 L. ed. 1327. This involves the immunity of the United States from suit. The Federal Government had acquired title subject to the lien of taxes and the case represents an attempt on the part of the Government to remove the cloud of the tax lien. The Supreme Court, in an opinion by Chief Justice Hughes, reversed an order striking off the lien but ruled that the property could not be sold for taxes without the consent of the United States. The case stands for two principles: First, a tax lien perfected before the United States took title is not lost because and while the Nation holds the title; second, the immunity of the sovereign prevents a sale of the land for taxes without the consent of the United States. Commonwealth v. Achterman et al., 23 D. & C. 98, is to the same effect as far as the State Government is concerned.

When application of these principles is made to the case at hand a distinction must be drawn between the parcels which were brought by the county commissioners at treasurer's sale and are still held by the county and parcels which were sold to the commissioners at treasurer's sale and have been by them resold to others.

As to lands still held by the county it is argued that the act under which the treasurer's sale was made, the Act of May 29, 1931, P. L. 280, allowed the city full opportunity to be heard and in particular section 12 as amended (72 PS §5971 L) provides for confirma-

tion by the court and exception thereto. Apparently the city raised no objection. Here the problem becomes acute. Certainly under the rule of Pittsburgh School District v. Allegheny County, supra, taxes can be levied upon property of a municipal subdivision which is not being used in public business and doubtless it could be sold for such taxes and for taxes filed previously before the acquisition of title; but the law as to property essential to the public business is not so clear. Is it the law that where the city has made prudent and timely preparation for the impending widening of a street the property which has been acquired and is being held for this purpose may be sold by another municipal subdivision? Is it a case where one hand may not know what the other hand is doing?

This case is before us on what amounts to a demurrer. The only essential admission is that the property was sold at treasurer's sale to the county. Lack of knowledge on the part of city officials of the existence of these liens prior to the treasurer's sale have been advanced as equitable reasons for striking off these sales.

Our conclusion on this branch of the case may be simply stated. It cannot be said as matter of law that because there has been a treasurer's sale of city lands without apparent objection by the city the treasurer's sale must stand as divesting the title of the city, however essential the lands are to the city's functions. Consequently, we are free to enquire into the lack of knowledge, the essential character of the property and other equitable considerations. Furthermore, having in mind the principles laid down by Chief Justice Hughes in the case of United States v. Alabama, supra, we are of the opinion that in case it be found that the property is essential but that the city was negligent in allowing the treasurer's sale to be made without protest, the maxim that he who comes into equity must be prepared to do equity may apply. Thus reconvey-

ance of property still held by the county upon payment of the liens might be approriate. A just decision requires that the facts be before us and hence this point of the case cannot be decided upon demurrer.

As to the lands which have been sold by the city a new consideration enters our inquiry. The bill of complaint does not allege under what statute sale was made but doubtless notice of some kind was given to the city. If the city, with knowledge of the proposed sale by the county, did nothing and encouraged or allowed the properties to be purchased by third persons who may have changed their position because of the city's silence and inaction the city may be estopped to deny that the sales are good. This conclusion may be inevitable even although we conclude that the treasurer's sales were wholly unwarranted. Because the question of laches and estoppel is ordinarily to be found only upon a survey of all the facts rather than upon demurrer and we believe this branch of the case also must go to final hearing we will content ourselves with mere citation of a few authorities on equitable estoppel of municipal corporations. Estoppel in pais may be asserted against the public: 3 Dillon on Municipal Corporations (5th ed.) 1194. "Rights frequently arise under contracts themselves unenforceable which the courts will protect": Aspinwall-Delafield Co. v. Aspinwall Borough, 229 Pa. 1, 5. A recent case where a city was estopped by the conduct of its officers acquiesced in was Ervin v. Pittsburgh, 339 Pa. 241. See also Allegheny City v. McClurkan & Co. et al., 14 Pa. 81; Ephrata Water Co. v. Ephrata Borough, 16 Pa. Superior Ct. 484; Lafean v. York County, 20 Pa. Superior Ct. 573.

The other reasons which have been advanced to support summary judgment are also inconclusive. For example, the difference between a deed of conveyance and a quitclaim deed does not suffice as against the possible claim of a city in possession for necessary gov-

ernmental purposes. Pa. R. C. P. 1061 is not exclusive. It gives no power of injunction or reconveyance.

In our opinion this is not a case for disposition upon preliminary objections but must go to final hearing.

### Order

Now, March 10, 1948, the preliminary objections filed by the County of Lawrence and by Victor Cubellis are each severally overruled and refused and defendants are directed to file their answer within 15 days.