### WHITE *v.* DUNSMORE.

1. TAXATION—NOTICE TO REDEEM—STATUTES.

   A notice to the owner of land given by the purchaser of State tax lands under Act No. 142, Pub. Acts 1905, and Act No. 270, Pub. Acts 1909, is ineffective if it describes only part of the land, or is improperly addressed, or if it fails to state that the sum demanded may be paid to the register in chancery; and a notice not signed by or on behalf of the tax purchaser is insufficient.

2. SAME—TRESPASS—REDEMPTION.

   A tax title purchaser who, without giving notice to the owner to redeem, enters upon land and cuts wood or timber is a trespasser. Act No. 142, Pub. Acts 1905.

3. SAME.

    While the State might have complained of the trespass before
    parting with its interest to the tax purchaser, it had no in-
    terest in the land thereafter.

4. TRESPASS—ACTIONS—TAX TITLE.

    The owner of the record title of land sold to the State for un-
    paid taxes and thereafter deeded by the State to a purchaser
    cannot maintain trespass for the wrongful entry of the holder
    of the tax interest before tendering the amount required to
    redeem and obtaining a reconveyance from the purchaser.
    Act No. 270, Pub. Acts 1909; Act No. 142, Pub. Acts 1905; 1
    Comp. Laws, § 3961 et seq.

Case-made from Missaukee; Lamb, J. Submitted
November 6, 1911. (Docket No. 51.) Decided Decem-
ber 8, 1911.

Trespass *quare clausum fregit* for treble damages by
Thomas White against Mark T. Dunsmore. Judgment
for defendant. Plaintiff brings case-made. Affirmed.

*Gaffney & Miltner*, for appellant.

*Sawyer & Penny*, for appellee.

The cause having been tried by the court without a
jury the court found:

"It is conceded that Thomas White, the plaintiff, be-
came the owner of the original title to the south half ($\frac{1}{2}$) of
the southwest quarter ($\frac{1}{4}$) of section 28, town 21 north, of
range 5 west, on the 10th day of July, 1906, and that the
conveyance was duly recorded August 18, 1906, in Liber
37 of Deeds, on page 356.

"It is conceded that said Thomas White, from the said
10th day of July, 1906, until the present time, has claimed
to be the owner of the original title to said lands.

"It is conceded that said Thomas White has never been
in actual possession of said lands, either in person or by
tenants, and that the lands are wild and uncultivated.

"It is conceded that said Thomas White has never paid
any taxes on said lands since he became the owner of the
title in the year 1906.

"It is conceded that the lands were sold for the delin-

quent taxes for 1906, bid in to the State, and that the time for redemption had expired prior to the 25th day of February, 1910.

"It is conceded that on the 25th day of February, 1910, the defendant, Mark T. Dunsmore, purchased said lands from the State for the taxes of 1906, and that he paid as a condition of the purchase some taxes on the southeast quarter of the southwest quarter of said section for the years 1905, 1907, and 1908, and that he has paid the taxes since.

"It is conceded that on or about the 15th day of March, 1910, before serving the statutory notice, the defendant entered upon the lands in question, and cut and removed some timber.

"It is conceded that on or about the 6th day of May, 1910, the return of service of the statutory notice of tax sale was filed in the office of the county clerk. This notice is claimed to be objectionable. In any event, from the view the court takes of the matter, the notice is of little, if any, moment.

"It is conceded that the said Thomas White has never redeemed or taken any steps to redeem from the sale to the defendant.

"The plaintiff, Thomas White, commenced this action May 26, 1910. The action is trespass under the statute for treble damages."

### Findings of Law.

"1. The sale of the lands in question for the delinquent taxes vested in the State, after the period of redemption had expired, all the right, title, and interest of the original owner. As between the State and the original owner, the title of the State was absolute.

"2. The State, in selling to the defendant, Mark T. Dunsmore, parted with all the title and interest it had to the land, but coupled the transfer thereof with a condition which the law imposes, viz.: That the purchaser shall give the original owner an opportunity to get a reconveyance of the title.

"3. The condition for reconveyance, which the law imposes, confers no title or interest upon the delinquent owner of the original title, but does confer upon him a privilege of obtaining a reconveyance of his title on specified terms.

"4. The privilege conferred by the statute upon the

original owner is not sufficient upon which to base an action for trespass under the statute. It was incumbent upon the plaintiff before bringing suit to first proceed to take advantage of that privilege by depositing with the register in chancery the amount necessary to obtain a reconveyance. This he had a right to do under section 141 of the general tax law, as amended. He was not compelled to wait for notice from Dunsmore. In fact, whether defendant, Mark T. Dunsmore, served a notice or not, in my judgment, is not a controlling element in the case. The gist of it is the plaintiff must first become reinvested with something more than a naked privilege, which is entirely optional with him to accept or reject, before he can maintain an action for trespass under the statute.

"It follows that judgment should be entered for the defendant, and it is so ordered."

OSTRANDER, C. J. (*after stating the facts*). Upon the findings of law, and each of them, plaintiff assigned error. No error is assigned upon the findings of fact, nor upon a failure to find other or further facts. It does appear in the record, and we understand the fact is not disputed, that the statutory notice served upon plaintiff April 6, 1910, did not contain the statement that the sum demanded might be paid to the register in chancery, nor was it properly addressed. Act No. 142, Pub. Acts 1905, § 140 (tax law); Act No. 270, Pub. Acts 1909. It was therefore an ineffective notice. *Weller* v. *Wheelock,* 155 Mich. 698 (118 N. W. 609). See, also, *Dolph* v. *Norton,* 158 Mich. 417 (123 N. W. 13). This notice described 40 acres only. On May 27, 1910, another notice, describing all of the land, was served on plaintiff, but it was not signed by the defendant, or by any one for him.

The statute (3 Comp. Laws, § 11204) makes every person who shall cut down and carry off any wood, trees, or timber on the land of any other person, without the leave of the owner thereof, liable to the owner of the land in three times the amount of damages assessed therefor, in an action of trespass. Plaintiff, relying upon this statute,

sues as owner of land, treating defendant, who cut the timber, as a trespasser.  That defendant was a trespasser is clear.  The statute (section 142 of the tax law; 1 Comp. Laws, § 3961), as amended by Act No. 142, Pub. Acts 1905, forbids the tax title purchaser to enter into possession until six months after he has given notice to the parties in interest, or has acquired the title of such parties. In *Corrigan* v. *Hinkley*, 125 Mich. 125 (83 N. W. 1020), such a purchaser, who entered into possession of the land, was held to be a trespasser, entitled to no pay for improvements made by him upon the land, and a decree, vacating the tax decree, but imposing upon the owner of the land, as a condition precedent, repayment of the taxes paid by the purchaser, and the value of improvements made by him, was reversed, and a decree entered, vacating the tax decree. In *Huron Land Co.* v. *Robarge*, 128 Mich. 686 (87 N. W. 1032), the action was replevin by the owner of land for timber cut thereon by a tax title holder, who had failed to give the statute notice.  A judgment for plaintiff, entered upon a directed verdict, was affirmed.  It is said that defendant was a trespasser; and that:

" The serving of this notice is a condition precedent to vesting the title under the tax proceedings in the tax purchaser."

In *Hickey* v. *Rutledge*, 136 Mich. 128 (98 N. W. 974), the action was replevin.  The plaintiff had cut ties upon land held by the State as State tax land.  The ties were seized by the State trespass agent.  Plaintiff afterwards acquired the State's title to the land, and sought to recover the ties.  His right to do this was denied.  It was said:

" When this timber was severed, the right of the State to pursue it became fixed.  It was no longer a part of the land.  The purchaser of the land would not take the timber by purchase from the State.  In whom, then, is the title to be vested ?  In a naked trespasser ?  Clearly, the rights of this plaintiff are no greater under his purchase

than they would have been had the trespasser been a third party. The State having a title at the time he committed the trespass, and the right to seize and pursue the timber, it does not lie in his mouth to say that that right has been defeated by a sale of something other or different, whether such sale be to another or to himself."

See, also, *Holmes* v. *Loud,* 149 Mich. 410 (112 N. W. 1109).

Assuming that the defendant cut the timber without right—was a trespasser—who may complain? The State alone might have done so, if the trespass had been committed before defendant, the trespasser, acquired the State's title. *Hickey* v. *Rutledge, supra; Blake* v. *Grondin,* 141 Mich. 104 (104 N. W. 423). The State had no interest in the land at the time the trespass was committed. The learned trial judge held, agreeably with defendant's contention, that the owner, at least before he obtained a reconveyance of the land from the tax title purchaser, could not maintain the action. It is attempted to support the ruling by decisions of this court that, after a regular sale of land for taxes, and after the period of redemption has expired, the State possesses the absolute title to the land; the owner has been divested of all interest therein, but acquires, upon a sale of the land by the State, opportunity and privilege of securing a reconveyance. The question of the value and extent of the interest, if any, remaining in the owner of land after sale of the land for taxes was somewhat discussed in the opinions filed in the case of *Morse* v. *Auditor General,* 143 Mich. 610 (107 N. W. 317). See, also, *Haney* v. *Miller,* 154 Mich. 337 (117 N. W. 71, 745); *Haney* v. *Auditor General,* 165 Mich. 681 (131 N. W. 386). In *Griffin* v. *Kennedy,* 148 Mich. 583 (112 N, W. 756), many of the previous decisions of the court are referred to and to some extent reviewed, and in the majority opinion it is said:

"After the expiration of his right to redeem from a regularly conducted sale, at which the State has purchased

—and that is the case with the land in question—it (the State) owns and can dispose of the land as it pleases; and this is true, though the former owner of the land continues in possession, for he is in possession without the right of possession."

The ruling thus announced was necessary to support the conclusion arrived at by the majority of the justices, and has been considered authoritative and controlling. In the same opinion, the force and effect of Act No. 229, Pub. Acts 1897, is considered, and it is said that by the act, which is the one providing for notice to the owner, and for securing a reconveyance of the land by him, the legislature intended—

" Merely to give owners the right to redeem after the State tax lands formerly owned by them were sold by the State to private purchasers under the general tax laws. * * * It is undoubtedly true that said Act No. 229 has the effect of giving to the former owner of the State tax lands a title which formerly he did not possess. See *Adkin* v. *Pillen*, 136 Mich. 682 [100 N. W. 176]. But this title does not come into existence until the sale described in said act has been made. That, it seems to me, was the legislative intent, and I see no difficulty in giving it effect. It may be said that a sale under the general tax laws transfers all the title of the State; part of the title so transferred passes to the purchaser, and part to the original owner of the land, his mortgagee, or grantee. I shall not undertake to give a technical name to each of these different titles. We can give effect to the legislative intent without performing that undertaking."

This and the other decisions referred to necessarily affirm the right of the State to sue the original owner of the land, as well as a stranger to the title, for injuring the freehold during the period of State ownership of the title.

There is nothing in the statute which imports the intention of the legislature to reinvest the original owner of the land with such title or right of possession as will support an action of trespass. The purchaser from the State is forbidden to make an immediate entry, and therefore

he may not lawfully disturb an original owner, who is in possession.   And it was pointed out, in the minority opinion in *Griffin* v. *Kennedy,* that the tax law contains no provision for dispossessing an owner by the State after the State has acquired its absolute title.   But if, as was held, the former owner has no right of possession, and if the State as owner may prevent waste by the former owner in or out of possession, it is difficult to construct a theory of title in such former owner which will support his action for injury to the land so long as he has not secured a reconveyance thereof from the purchaser from the State. Plaintiff here has not even actual possession of the lands, which are wild and uncultivated.   Whether he intends to acquire the lands from the defendant, we do not know. He had the right to do so when the trespass was committed, and when the suit was instituted.

In two cases, namely, in *Huron Land Co.* v. *Robarge, supra,* and *Holmes* v. *Loud, supra,* the right of the landowner to recover against such a trespasser has been affirmed.   In both of these cases, it appears to have been assumed by counsel that if the defendant was held to be a trespasser the original owner of the land could maintain the action — in the first case, the action of replevin, in the other, the action of trespass.   The record in *Huron Land Co.* v. *Robarge* does not disclose the fact that plaintiff, the landowner, had paid or tendered the sum necessary to secure a reconveyance of the land.   It is to be inferred from the record that he had not done so.   In *Holmes* v. *Loud,* it appeared that defendants acquired the State tax deed to certain lands, and notified the person who appeared of record to be the original owner.   The notice was served July 25, 1902, and it was assumed by defendants that the six months' period would expire January 25, 1903.   Cutting of timber on the land began January 26, 1903. Reckoning from the date of filing proof of service of the notice, the six months expired February 23, 1903.   The action was brought for the injury to the freehold, result-

ing from the cutting of timber, begun in January. It appears that the tax title holder conveyed the land in February to the one in whose right the action was begun, who held an unrecorded deed from the owner of record. But in neither case was it contended that the original owner had not such a title to or interest in the land as would support the action.

If the owner may maintain trespass at all, his right of action accrues when the trespass is committed, and cannot be affected by his subsequent refusal to obtain a reconveyance of the State's title. If he does not secure a reconveyance of the land, and is out of possession, he has in fact lost nothing by the injury to the freehold, unless he has the right meantime to deal with the land as an owner—to cut and sell timber, for example. On the other hand, if the original owner, in or out of possession, injures the freehold, and fails to pay for a reconveyance, the tax title purchaser is injured, because he does not finally secure what the State, as absolute owner, sold to him. The former owner may obtain a reconveyance of the land, and if he does he is entitled to have reconveyed the property which the State conveyed by its deed, unchanged and undiminished in value by any acts of his vendor. And if he does not redeem, the purchaser from the State is entitled to the land, uninjured by acts of the former owner thereof, committed after the State acquired the title. We are necessarily brought to this conclusion by the language of the statute and the decisions of this court. If the purchaser from the State acts promptly, or if the former owner pays, as he may, to the register in chancery, the sum necessary to secure a reconveyance, the interval of time is short. And we perceive no reason for saying that, once the rights of the parties are determined, an action may not be maintained by the proper party to recover damages for any injury to the freehold by the other party, or that meantime threatened injury to the freehold may not be restrained by either, by the process of the

court of chancery. But we are of opinion that the trial court was right in holding that the former owner could not, before securing reconveyance of the land, maintain this action.

The judgment is therefore affirmed.

STEERE, MOORE, BROOKE, and STONE, JJ., concurred.