HURON LAND CO. *v.* LOBDELL-CHURCHILL MANUFAC-
TURING CO.

**1. Taxation—Title—Sale.**

After the sale to the State of land for taxes and expira-
tion of the period of redemption, the State's title becomes
absolute.

**2. Same.**

While the owner of the title may buy in an outstanding
title at an agreed price, he may not bargain orally for
the interest in such a way as to extinguish it; and an
uncompleted arrangement to buy in the tax title interest
without a tender of the amount required by statute (Act
No. 270, Pub. Acts 1909, amending section 141 of the tax
law; 1 How. Stat. [2d Ed.] § 1912), confers no rights on
the original holder of the title.

**3. Same—Compromise—Tax Title.**

An oral arrangement between the owner and a tax title
purchaser that the latter should reconvey his interest
and receive credit for $50 on a claimed indebtedness due
to the owner, without the payment or tender of money,
did not extinguish the tax interest.

**4. Payment—Tender.**

"Payment" imports the tender of money and its receipt by
the person to whom it is offered.

Error to Cheboygan; Shepherd, J.  Submitted June
19, 1914.  (Docket No. 15.)  Decided October 3, 1914.

Ejectment by the Huron Land Company, Limited,
against the Lobdell-Churchill Manufacturing Co.
Judgment for defendant on a directed verdict.  Plain-
tiff brings error.  Affirmed.

*H. K. Gustin,* for appellant.

*Charles R. Henry* and *Victor D. Sprague,* for ap-
pellee.

The plaintiff claims to be the owner of the original title to certain land, and therefore owner of the timber growing thereon. ' Defendant, who is sued for the value of timber which it is claimed was cut and removed from the land, is assignee of the grantee of an owner of tax titles, admitted to be regular, but who had no right to possession of the land thereunder because no notice had been given to the original owner of the right to secure a reconveyance of the land. The land was wild, uncultivated forest land, in the actual possession of no one. Plaintiff offered testimony which it is claimed tends to prove an arrangement between its representative and the tax title owner by which the tax title interest was extinguished. Section 141 of the general tax law provides, among other things, that any person or persons entitled to a release and quitclaim under the provisions of the section shall have the right to redeem such lands from such sale by paying to the purchaser, on the certificate of the auditor general or his deputy, all sums paid as a condition of such purchase, together with 100 per centum additional thereto, etc.

"By such payment the tax title and any and all such certificates of sale shall become void and of no effect against the lands to be redeemed." Act No. 270, Pub. Acts 1909.

The offer made to prove payment was:

"We offer to prove that after Mr. Thomas Finan had purchased this tax title in 1902, in July, and before December, 1902, the witness Mr. Gustin met him at Tower, and Mr. Finan advised him that he had this tax title against the lands—against the S. E. ¼ of section 24, which included the S. E. ¼ of section 24, to which the Huron Land Company held the original title, and he wanted to know from Mr. Gustin what the Huron Land Company desired to do about the matter; and by an arrangement with Mr. Thomas Finan upon the payment of $50, he permitted the

Huron Land Company to redeem the S. E. ¼ of the S. E. ¼ of section 24, from this tax title."

This offer was followed, the jury being absent, by a colloquy:

"*Mr. Gustin:*  We will follow it by showing that the $50 was paid.

"*Mr. Henry:*  That agreement, under your offer— this arrangement and this understanding was all verbal?

"*Mr. Gustin:*  It was.

"*Mr. Henry:*  And no papers have ever passed between you and Thomas Finan in reference to the redemption?

"*Mr. Gustin:*  No, except the payment of the $50.

"*Mr. Henry:*  And that did not take place at that time; but you propose to show that by some arrangement which you had in Tower, in some other deal, $50 was considered payment?

"*Mr. Gustin:*  Yes, sir; we paid the $50 afterwards.

"*Mr. Henry:*  Was it $50 paid direct to Thomas Finan?

"*Mr. Sprague:*  In cash?

"*Mr. Gustin:*  No.

"*Mr. Henry:*  Did you hold any receipt from him, or writing, that $50 was paid for the purpose of redeeming?

"*Mr. Gustin:*  No."

The court expressed the purpose to receive the testimony, the jury was recalled, and the following testimony was given:

"Some time in the fall of 1902, after Thomas Finan had purchased— * * * well, it was in the fall— it was before December, 1902. He advised me that he had purchased a tax title against the S. E. ¼ of section 24, in town 33, range 1 west; and upon looking up the record, he found that the Huron Land Company owned this S. E. ¼ of the S. E. ¼ of section 24. I was doing considerable law business for the Finans, and he wanted to know what I wished to do, or the Huron Land Company wished to do, in reference to this description; and we figured up the amount

of taxes as nearly as we could, upon this description of land, and he told me if we wished to redeem it for $50, he would permit us to redeem it. And I told him that the Huron Land Company would redeem it, and that I would give him credit, or Finan & Finan credit, upon their account for my services in the matters I was handling for them. And this was the arrangement and understanding by which the Huron Land Company redeemed this S. E. ¼ of the S. E. ¼ of 24.

"*Q.* Did you, from that time afterwards, or the Huron Land Company, pay the taxes on those lands?

"*A.* We did—always paid them.

"*Q.* Is there anything else, Mr. Gustin?

"*A.* I do not think of anything else."

And this:

"*Mr. Henry:* I would like to ask Mr. Gustin, because it may save a day's time, if this credit to Mr. Finan appears of record in your books?

"*Mr. Gustin:* In my books? No, it does not.

"*Q.* So that there is absolutely no writing in your possession evidencing this, even in your own books of account?

"*A.* No.

"*Q.* And was any conveyance made—reconveyance, by Thomas Finan, or any one for him, or any of his grantees, to you pursuant to this verbal arrangement that you speak of?

"*A.* It was made, but he never delivered it to me.

"*Q.* Did you ever have any correspondence, by letters pro and con, about it?

"*A.* I don't know whether I did or not.

"*Mr. Reilley:* Was there any notice ever served by any one under that tax title on the Huron Land Company at any time?

"*A.* Not to my knowledge.

"*Mr. Henry:* Did you ever, since that time, have a settlement with Thomas Finan, in which this $50 was brought into account?

"*A.* Yes, sir.

"*Q.* Was any part of that in writing?

"*A.* No.

"*Q.* By bills rendered, pro and con?

"*A.* No.

"*Q.* That all rests in parol?

"*A.* My settlement for services and everything else was all in parol.

"*Q.* Did you have a running account with him at the time, or was this a separate transaction?

"*A.* No; I just had a running account for services —an account for services. I done certain work for them. There was no account made of it.

"*The Court:* Was the Huron Land Company charged with $50?

"*A.* I think they were, your honor.

"*Mr. Henry:* Have you any record of that in the Huron Land Company's books?

"*A.* I think there is. I am not positive on the question, because I have not investigated it."

It may be stated, further, that Mr. Thomas Finan testified (his deposition was taken) that plaintiff never paid nor tendered him any money for a reconveyance of the premises, and no one claiming to be owner or to have any interest in or lien on the land ever paid or tendered to him any money for the purpose of securing a reconveyance of the tax title interest. The court struck out the testimony and instructed the jury to return a verdict for defendant, stating that:

"The defendant had acquired the timber from one William Gillis, who had acquired it from James Finan, who had acquired it from Thomas Finan, who was holding it under a tax title.

"That this tax title was unredeemed and was a subsisting tax title at the time of the removal of the timber in question from the land and its acquirement by the defendant company, and is yet unredeemed.

"The Huron Land Company, the plaintiff, is therefore not in position to maintain this action for the injury to the premises, or for the property removed from it.  *  *  * "

OSTRANDER, J. (*after stating the facts*). Adhering to former rulings (*Griffin* v. *Kennedy,* 148 Mich. 583

183 Mich.—4.

[112 N. W. 756] ; *Horton* v. *Helmholtz,* 149 Mich. 229
[112 N. W. 930] ; *Haney* v. *Miller,* 154 Mich. 340 [117
N. W. 71, 745] ; *Haney* v. *Auditor General,* 165 Mich.
681 [131 N. W. 174] ; *White* v. *Dunsmore,* 167 Mich.
548 [133 N. W. 523] ; *Powell* v. *Pierce,* 168 Mich. 427
[134 N. W. 447] ; *Holmes* v. *Soule,* 180 Mich. 526
[147 N. W. 621]), which we are asked by appellant
to re-examine and to modify to the extent of holding
that some interest in the land remains to the owner
after regular sale of it for taxes and after the period
of redemption expires, we consider only whether the
court erred in striking out the testimony above re-
ferred to and directing a verdict for defendant. We
conclude that no error was committed. In *Backus* v.
*Hoyt,* 164 Mich. 407 (129 N. W. 693), we affirmed
a decree for a reconveyance of land, it appearing that
a legal tender had been made to the tax title holder
by the owner of the original title. In *Wilson* v. *Sauble,*
181 Mich. 406 (148 N. W. 165), an action of eject-
ment, we held that a court of equity is the proper
forum for determining whether or not the owner of
a title cut off in tax proceedings is entitled to a re-
conveyance from the tax title owner who refuses it;
that he does not acquire title by a tender of money, the
right to make which is disputed. In the present case,
there is no claim that plaintiff paid the amount which
the statute requires to be paid to secure a reconvey-
ance. At best, the testimony of the plaintiff tends to
prove an arrangement, never completed, to buy the tax
title interest. There can be no question about the
right of an owner of land to buy in an outstanding
tax title for an agreed price. But, except for the
statute, he would be obliged, as against all persons
dealing with the owner, and upon the disclosures made
by the record, to secure the tax title interest so pur-
chased by some conveyance or writing. The words
of the statute negative the proposition that by any

uncompleted private bargaining the interest of the tax title owner can be extinguished. The words, "on the certificate of the auditor general, or his deputy," have some significance. The word "payment" imports a tender of money and its receipt by the person to whom it is tendered. The benefit of the statute is for those who perform the conditions upon which the benefit attaches. A refusal of a proper tender may be relieved against in equity.

The judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.