CLUGSTON v. ROGERS.

1. STATUTES—AMENDMENTS—PROCEDURE.
   In so far as a new statute merely provides for changes in the mode of procedure, it will not invalidate steps taken before it goes into effect, but will apply to all proceedings taken thereafter.

2. TAXATION—REDEMPTION—NOTICE—STATUTE—COMPLIANCE.
   Where notice of right to reconveyance of lands sold for taxes within six months after service of notice complied with Act No. 236, Pub. Acts 1903, in force when the notice was placed in the sheriff's hands for service, but before service Act No. 142, Pub. Acts 1905 (1 Comp. Laws 1915, § 4138), took effect, amending the former act by providing for reconveyance within six months after return of service of notice, and the notice by publication was not changed to conform to the amendatory act, the notice was insufficient.

3. SAME—NOTICE—BONA FIDE RETURN—STATUTE.

Evidence *held*, sufficient to sustain the conclusion of the court below that there was not such good faith effort on the part of the sheriff to make personal service on the persons entitled thereto as the law demands.

4. SAME—VOID TAX TITLE—RIGHT TO RECOVER FOR IMPROVEMENTS.

Where the tax title purchaser entered premises as a trespasser, he was not entitled to recover for improvements thereon, on failure of his title.

5. SAME—RIGHT TO RECOVER TAXES PAID.

Neither could he recover on account of taxes paid during his illegal occupancy, where they were more than offset by the benefits he had received from the premises.

Appeal from Alpena; Emerick, J. Submitted April 11, 1918. (Docket No. 67.) Decided October 7, 1918.

Bill by Elizabeth P. Clugston and others against Austin L. Rogers to redeem from the sale of land delinquent for taxes. From a decree for plaintiffs, defendant appeals. Affirmed.

*Dayton W. Closser (I. S. Canfield,* of counsel), for plaintiffs.

*O'Brien & Francis,* for defendant.

BIRD, J. Defendant Rogers purchased from the State on the 2d day of December, 1904, in 40-acre parcels, the north half (½) of the northeast quarter (¼), and the southwest quarter (¼) of the northeast quarter (¼) of section ten (10), town twenty-nine (29) north, range six (6) east, Alpena county, for the taxes of 1890, 1891, 1894, 1896-1900; also a tax deed of the land above described as one parcel for taxes of 1892, also certificate of purchase for taxes of 1901, and tax receipts for taxes of 1902 and 1903 paid as condition of said purchase. The total amount paid for said purchase being $306.63.

It was conceded that the government chain of title was in plaintiffs. This chain of title shows that at

the time defendant purchased the tax title, Edward K. Potter was the grantee in the last recorded deed in the regular chain of title of the north half of the northeast quarter, and that William Slee was the grantee in the last recorded deed in the regular chain of title of the southwest quarter of the northeast quarter.

On the 25th day of April, 1905, Rogers placed a notice of reconveyance in the hands of the sheriff of Alpena county for service. The sheriff retained the notice until July 1, 1905, when he made the following return:

"STATE OF MICHIGAN,   } ss.
  "COUNTY OF ALPENA,   }

"I do hereby certify and return that I received the annexed notice of tax sale (Austin L. Rogers to estate of Edward K. Potter and estate of William Slee) on the 25th day of April, A. D. 1905, and that after careful inquiry I have been unable to ascertain the whereabouts or the postoffice address of the grantee named in the last recorded deed, or deeds, or the mortgagee named in all undischarged recorded mortgages, or the assignee of record of said mortgage of said premises, or of the heirs of said grantee or mortgagee or assignee, or whereabouts or the postoffice address of the executor, administrator, trustee or guardian of such grantee, mortgagee, or assignee, or of any of the heirs-at-law of the said estate of Edward K. Potter or of the estate of William Slee.

"Dated, this first day of July, A. D. 1905.

              "ANTHONY PETERSON,
                    "Sheriff."

Service by publication followed and after the statutory period defendant took possession of the premises and has ever since been in the possession thereof.

Plaintiffs, in August, 1915, filed this suit to redeem said premises. At the hearing none of the deeds involved were questioned. The attack was made by plaintiffs upon the form of the notice of reconveyance

and on the service of the notice. The chancellor concluded that neither the form of the notice nor the service was legal, and a decree was made giving plaintiffs the right to repurchase upon payment of $628.26.

1. *The form of the notice.* The defendant placed the notice with the sheriff for service on April 25, 1905. The notice advised the persons addressed "that you are entitled to a reconveyance thereof at any time within six months after service upon you of this notice." This was in compliance with Act No. 236 of the· Public Acts of 1903 then in force. While the sheriff was holding the notice for service, and on May 25, 1905, this part of the statutory notice was changed by amendment (Act No. 142 of the Public Acts of 1905, 1 Comp. Laws 1915, § 4138) to read:

"That you are entitled to a reconveyance thereof at any time within six months after return of service of this notice."

Notwithstanding this amendment no change was made in the notice for publication. It is claimed by plaintiffs that the failure to make the notice comply with the amendment invalidates it, citing *Closser* v. *Remley*, 195 Mich. 313. This case holds that a failure to incorporate into the notice the amended words renders it invalid. Defendant recognizes this but seeks to escape the effect of it by the fact that the notice was placed in the hands of the sheriff for service prior to the taking effect of the amendment. The amendment did not affect any substantial right of the defendant, neither did it deprive him of the existing remedy. It simply modified the mode of procedure. The rule in such cases is stated to be as follows:

"In so far, however, as the new statute merely provides for changes in the mode of procedure, it will not invalidate steps taken before it goes into effect, but will apply to all proceedings taken thereafter." 36 Cyc. p. 1216.

See, also, *Union County Com'rs* v. *Greene,* 40 Ohio St. 318; *Mayne* v. *Huntington County Com'rs,* 123 Ind. 132 (24 N. E. 80) ; *Weller* v. *Wheelock,* 155 Mich. 698.

This appears to be the general rule and we think it should be applied in this case. This amendment of the tax law had been in effect more than a month before the sheriff made his return and nearly two months before any attempt was made to make service by publication. Our conclusion on this point brings the case within the holding of *Closser* v. *Remley, supra.*

2. Considerable testimony was taken at the hearing bearing upon the good faith of the sheriff's return. In holding that the return was not a good faith return the chancellor said:

"Another, and a most serious contention made by plaintiffs is that the sheriff did not make the careful inquiry as to the whereabouts and postoffice address of the persons entitled to notice which the law requires. True it is, there is no direct evidence of the efforts and inquiries actually made by the sheriff in his attempts to learn such matters, or that he made no such effort or inquiries at all. But it must be such facts may be proved by indirect evidence. Suppose a sheriff today should return that he was unable to ascertain the whereabouts or postoffice address of Governor Sleeper, or of William T. Sleator, the mayor of the city of Alpena. Surely, the court, from the very prominence of certain individuals in a given community would be justified in finding as a fact that the officer had made no such careful, good faith inquiry as the law required.

"The holders of the last recorded deeds in the regular chains of titles of the lands involved in this case were Edward Kent Potter and William Slee. In 1905 both of these men were recently deceased, and the notice placed in the hands of the sheriff for service was directed to their respective estates. Mr. Potter was one of the most prominent of the pioneer citizens and business men of Alpena. For more than

twenty-five years he was a joint owner and operator of a large steam saw mill, situate on the river at the head of Washington avenue, in that city, and resided in a home on that street that was, and still is, a landmark of the town. Midway between the mill and home of Mr. Potter lived Christian Peterson, the father of the sheriff, Anthony Peterson, in a house at 912 Washington avenue, where the sheriff was born and always lived until he moved into the county jail upon his election to the office of sheriff. The elder Peterson was an employee of Mr. Potter for years in this mill, and during the later years of the active business career of Mr. Potter while he carried on business, associated with his two sons, Charles E. and William H. Potter, 2d, plaintiffs in this case, under the firm name of E. K. Potter & Sons, the sheriff himself was an employee of this firm in this same mill. He grew up a playmate and schoolmate in the old fourth ward school with all the Potter children, the plaintiffs. in this case. After Mr. Potter's death, his widow and his five children removed to Los Angeles, in the State of California, and his children reside there still. Two brothers of Mr. E. K. Potter, James J. and John D. Potter, continued to reside at, and carry on one of the most extensive mercantile establishments in the city of Alpena, under the firm name of Potter Brothers. The location and residence of the plaintiffs after their removal to California and before was notorious in the city of Alpena and any inquiry at all made by Anthony Peterson would, if, indeed, he did not already know, have placed him in possession of full knowledge of the whereabouts and postoffice address of each of the Potter children, the plaintiffs in this case.

"And William Slee was another prominent citizen and business man of Alpena. In 1905 his estate was being administered in the probate court of Alpena county. His widow, Clara Matilda Slee, herself a well known resident of Alpena, was administratrix of his estate and the guardian of his minor children, by the order and decree of the same court wherein all these matters were of record. The notice itself was directed to the estate of William Slee and was ample notice to the sheriff that he would find just what he needed to know in the probate records of Alpena county. I

think it can be surely said that any inquiry, however slight, would also have given the sheriff complete knowledge as to the heirs and personal representatives of William Slee.

"Therefore, there was not the earnest effort made in good faith on the part of the sheriff to give plaintiffs actual notice of defendant's tax titles, which the law demands."

We have read the testimony bearing on this question and we fully concur in the conclusion reached by the chancellor. It may be easier to have the sheriff make a return on the notice and get service by publication where the heirs are numerous and badly scattered, but that course is not a compliance with the statute, neither is it the exercise of the diligence and good faith which the law demands. *Winters* v. *Cook,* 140 Mich. 483.

3. It is argued by defendant that if it shall be held that he is not entitled to possession of the premises he is entitled to recover for the improvements which he has made thereon. The chancellor overruled this contention, holding that as Rogers had entered the premises as a trespasser he was not entitled to recover for such improvements, citing *Corrigan* v. *Hinkley,* 125 Mich. 125; *Griffin* v. *Kennedy,* 148 Mich. 583; *Cook Land, etc., Co.* v. *McDonald,* 155 Mich. 175; *Morrison* v. *Semer,* 164 Mich. 208; *White* v. *Dunsmore,* 167 Mich. 542; *Powell* v. *Pierce,* 168 Mich. 427; *Closser* v. *McBride,* 182 Mich. 594.

The chancellor was also of the opinion that no recovery should be had on account of taxes paid by him during his illegal occupancy, expressing the opinion that they were more than offset by the benefits he had received from the premises.

We are of the opinion that the chancellor took the proper view of the questions involved. The decree will be affirmed, with costs to the plaintiffs.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.