CLOSSER *v.* ABRAHAM.

1. TAXATION—NOTICE OF RECONVEYANCE—TIME FOR SERVICE.
   Purchaser of land on State tax land deed who failed to give statutory notice of reconveyance within five years from date he became entitled to a tax deed is forever barred from asserting his title or claiming a lien on the land by reason of the tax purchase (1 Comp. Laws 1929, § 3466).

2. EJECTMENT—CONDITION PRECEDENT TO ACTION AGAINST TAX TITLE
    PURCHASER—NOTICE OF RECONVEYANCE.
        Original title holder of land sold defendant on State tax land
        deed *held,* not required to deposit amount set forth in notice
        of reconveyance with the clerk of the court before filing action
        of ejectment where defendant had delayed more than five
        years before giving the required notice, as purchasers of tax
        titles must follow the statutory procedure and upon failure
        to do so their rights are forever barred (1 Comp. Laws 1929,
        § 3466).

BUSHNELL, J., dissenting.

Appeal from Alcona; Reid (Neil E.), J., presiding. Submitted January 6, 1938. (Docket No. 59, Calendar No. 39,767.) Decided May 4, 1938.

Ejectment by Helen L. Closser against Arthur G. Abraham. Judgment for defendant. Plaintiff appeals. Reversed.

*John F. McCarthy (Dayton W. Closser,* of counsel), for plaintiff.

*Neithercut & Neithercut,* for defendant.

CHANDLER, J. The issue presented by this appeal is, Was it necessary that plaintiff deposit the amount of money set forth in the notice for reconveyance with the clerk of the court before filing an action in ejectment where the land had been sold on State tax land deed?

Justice BUSHNELL's opinion answers this question in the affirmative. I am not in accord with his determination thereof. The solution to the foregoing issue is derived from the following excerpt from 1 Comp. Laws 1929, § 3466 (Stat. Ann. § 7.119), effective September 28, 1907:

"In case of such failure to give required notice for reconveyance within the period of five years from the date such purchaser, his heirs or assigns, shall become entitled to a tax deed to be issued by the auditor general, the person or persons, claiming title under the tax deed or certificate of purchase shall be forever barred from asserting such title or claiming a lien on the land by reason of such tax purchase."

My Brother relies upon *White* v. *Dunsmore,* 167 Mich. 542; *Powell* v. *Pierce,* 168 Mich. 427; *Closser* v. *McBride,* 182 Mich. 594. To these cases may be added *Gustin* v. *Fitzpatrick,* 182 Mich. 640; *Huron Land Co.* v. *Lobdell-Churchill Manfg. Co.,* 183 Mich. 45; *Bretz* v. *Hitchcock,* 188 Mich. 492; *Dunn* v. *Papenfus,* 202 Mich. 131; *Burch* v. *Nippress,* 213 Mich. 185. All of the foregoing cases may be distinguished from the present suit upon the grounds that five years had not elapsed from the date the tax title purchaser became entitled to a tax deed or the case arose prior to the time the above mentioned statute became effective. The case of *Jacques* v. *Bosman,* 181 Mich. 495, clearly enunciates the rule that the five-year limitation fixed by Act No. 58, Pub. Acts 1907 (1 Comp. Laws 1929, § 3466), does not apply to deeds issued before the act took effect.

In *White* v. *Dunsmore, supra,* the court held that upon sale of a tax title by the State the tax laws only confer a privilege of reconveyance to the original owner, and without securing reconveyance or depositing with the register in chancery the amount necessary to obtain a reconveyance, he cannot maintain an action in trespass. Since the original owner could not maintain trespass against the State, the court was correct in deciding that a mere privilege of reconveyance when a tax title was sold to a third party does not increase the former's rights without

reconveyance. Upon analysis of the *Dunsmore Case*
I find that the tax titles were acquired in 1910, the
same year in which plaintiff started his trespass ac-
tion, and in the following year this court rendered
its decision. It therefore follows that defendant had
several years remaining under the provisions of 1
Comp. Laws 1929, § 3466, in which to give notice of
reconveyance. Thus, the court in effect recognized
that a judgment against the tax title purchaser
without redemption or a deposit of money with the
register in chancery would be manifestly unfair if
the defendant perfected his title during the time
provided by statute. It is upon this theory no doubt
that the court said:

"If the owner may maintain trespass at all, his
right of action accrues when the trespass is commit-
ted, and cannot be affected by his subsequent re-
fusal to obtain a reconveyance of the State's title.
If he does not secure a reconveyance of the land, and
is out of possession, he has in fact lost nothing by
the injury to the freehold, unless he has the right
meantime to deal with the land as an owner—to cut
and sell timber, for example. On the other hand, if
the original owner, in or out of possession, injures
the freehold, and fails to pay for a reconveyance, the
tax title purchaser is injured, because he does not
finally secure what the State, as absolute owner,
sold to him. The former owner may obtain a recon-
veyance of the land, and if he does he is entitled to
have reconveyed the property which the State con-
veyed by its deed, unchanged and undiminished in
value by any acts of his vendor. And if he does not
redeem, the purchaser from the State is entitled to
the land, uninjured by acts of the former owner
thereof, committed after the State acquired the
title. We are necessarily brought to this conclusion
by the language of the statute and the decisions of

this court. If the purchaser from the State acts promptly, or if the former owner pays, as he may, to the register in chancery, the sum necessary to secure a reconveyance, the interval of time is short. And we perceive no reason for saying that, once the rights of the parties are determined, an action may not be maintained by the proper party to recover damages for any injury to the freehold by the other party, or that meantime threatened injury to the freehold may not be restrained by either, by the process of the court of chancery. But we are of opinion that the trial court was right in holding that the former owner could not, before securing reconveyance of the land, maintain this action.''

In the instant case the tax titles were acquired in 1927, and proceedings contesting the same for improper notice of reconveyance were commenced after the five-year period provided by the statute had run. *White* v. *Dunsmore, supra,* is, therefore, inapplicable to the present situation.

In *Powell* v. *Pierce, supra,* the government title holder sued in ejectment and the defendant resisted upon the strength of two tax deeds from the State dated October 2, 1902 and August 22, 1903. This court in 1916 held that having failed to pay to the register in chancery the amount necessary to secure a reconveyance, the plaintiff could not maintain ejectment. *Closser* v. *McBride, supra,* holds that the government title holder, having deposited sufficient money with the register in chancery may maintain ejectment against a tax title purchaser, who served an invalid notice of redemption, without having actually secured a reconveyance of the property.

Both the *Powell* and *Closser Cases* rely upon *White* v. *Dunsmore, supra,* as authority, but are to be distinguished in that the tax deeds involved in these suits were secured from the State prior to the

effective date of the statute (1 Comp. Laws 1929, § 3466), and at a time when proper notice of reconveyance would ultimately have perfected the title of the tax deed purchaser if there was no redemption. Hence, the requirement of a deposit of the money necessary to secure a reconveyance was essential in order to determine the rights of the parties.

The same objection may be stated against the applicability of the following four cases which have been heretofore referred to:

In *Huron Land Co.* v. *Lobdell-Churchill Manfg. Co., supra,* it was held that ejectment will not lie against a purchaser of a tax deed in 1902 who is unlawfully in possession for failure to give notice of reconveyance where there is merely an uncompleted arrangement to buy in the tax title interest without a tender of the amount required.

A bill to quiet title based upon a tax deed of February 27, 1904, was filed in *Bretz* v. *Hitchcock.* Defendant filed a cross-bill for an accounting for unlawfully cutting and removing timber. The court decided that plaintiff could not have a decree because of improper service thus enabling defendants to redeem. But defendants could not have a decree because the time for redemption had not expired, and since the defendants had not in fact redeemed they were not entitled to a reconveyance.

In *Dunn* v. *Papenfus, supra,* it was decided that a bill to redeem from a tax title purchased on June 25, 1907 could be maintained upon payment of statutory sums together with such sums and interest thereon as had been paid as taxes by defendant since the purchase from the State where defendant failed to serve the owner of a reservation of timber rights with a notice to redeem.

In *Burch* v. *Nippress, supra,* the court holds that in an action to secure reconveyance of land sold for

non-payment of taxes assessed from 1913 through 1916, plaintiffs were entitled to redeem upon paying or tendering the amount provided for by statute, improper notice of reconveyance having been served upon a mortgagee. A reading of the opinion in this case quite clearly indicates that it was decided at a time when the five-year period provided by 1 Comp. Laws 1929, § 3466, had not elapsed.

Since defendant has failed to give the required notice of reconveyance within five years from the date he became entitled to a tax deed, he is forever barred from asserting his title or claiming a lien on the land by reason of the tax purchase. It is therefore unnecessary for the plaintiff to deposit the amount of money set forth in the notice of reconveyance with the clerk of the court before proceeding with this suit in ejectment. Purchasers of tax titles must follow the statutory procedure and upon failure to do so their rights are forever barred. *Mc-Vannel* v. *Pure Oil Co.*, 262 Mich. 518.

Reversed and remanded for entry of judgment for plaintiff, with costs of both courts.

WIEST, C. J., and BUTZEL, SHARPE, POTTER, NORTH, and MCALLISTER, JJ., concurred with CHANDLER, J.

BUSHNELL, J. (*dissenting*). This is an action in ejectment, brought by plaintiff, the conceded holder of the original title to 240 acres of uncultivated land in Alcona county. She obtained her title by deed dated September 13, 1934, for which she paid the sum of $50. Defendant claims title thereto through four State tax deeds issued to him in 1927, covering taxes for the years 1921 and 1922 on three of the parcels, and for the same years and 1923 on the remaining parcel. Defendant also paid the taxes for the years 1924, 1925 and 1926. The land being un-

occupied and uninclosed at the time defendant Abraham obtained his tax deeds, he caused cards to be printed, reading, "No hunting or trespassing allowed. Private property. Art Abraham," and posted about 400 of them on trees standing on property. He and his associates organized "The Sand Lake Hunting Club," and they have from time to time used the property for the purposes indicated by this name. Abraham also inclosed the entire property by a single wire and erected gates at the entrance.

Abraham lives in the city of Flint, where for a number of years he has operated a sports goods store; and, although not engaged in the business of buying tax lands, he realized that it was necessary to give notice to the party or parties in interest to redeem said lands from the tax sales. See 1 Comp. Laws 1929, § 3535 *et seq.* The parties who were entitled to notice, so far as indicated by this record, were Claude Briggs and Louis A. Nall, trustees under a trust agreement for the benefit of the Central Michigan Farm Homes Company, Clyde L. Woodliff, assignee of record of a certain mortgage, Edmund M. Sloman, holder of a second mortgage, and one Fred C. Goodrich, whose interest is not disclosed in the record. At the trial evidence was received to show that the mortgage held by Woodliff had been assigned some time ago to the Great Lakes Finance Corporation. This assignment, however, had not been recorded at the time Abraham obtained his tax deeds.

Abraham testified that he made several trips to Detroit in an attempt to locate Briggs, Nall and Woodliff. He said that while in Detroit he consulted the telephone directory, but that he did not look at the city directory. Apparently at the time

he did not know the given names of either Briggs or Nall. Being unable to find them or Woodliff in 1927, he went to Harrisville, the county seat of Alcona county, where the land was situated, and turned the matter over to Judge Herman Dehnke, who was then still practicing law, prior to becoming judge of the 23rd judicial circuit on January 1, 1928. Judge Dehnke testified that his law office records showed that Goodrich was served personally as to some of the parcels on October 7, 1927, the Title Guaranty & Casualty Company (whose interest is not clearly indicated) was notified by personal service on its general manager on November 14, 1927, and Edmund Sloman on November 1st; that under date of December 15, 1927, the Wayne county sheriff, to whom Judge Dehnke had sent the tax notices for service, returned that he was unable to locate the Great Lakes Finance Corporation, Clyde Woodliff, and Claude Briggs and Louis Nall, trustees. Because of failure to find the necessary parties and serve them personally, notices were published, in compliance with the statute, in the Alcona County Herald.

When Judge Dehnke sent the tax notices to the Wayne county sheriff, he gave the address of Woodliff, Briggs and Nall as 519 Hammond building, but the sheriff could not locate them at this address. About 6½ weeks prior to sending these notices, Judge Dehnke had been notified by the Wayne county sheriff that Woodliff had been served in a matter that the judge was handling for one Moore. Nine days after sending these notices, he was notified by the same officer that Nall had been served in the Moore matter. However, Judge Dehnke, after being informed that service could not be made on these parties in the Abraham matter, did not call the sher-

iff's attention to the fact that they had been served in the Moore matter without any difficulty.

The city directory was not examined by Abraham. Had this been done, it would have disclosed the addresses of some of these parties. There was at the time a copy of the Michigan State Gazetteer in the office of the county clerk of Alcona. Examination of that book would have shown that Woodliff was a contractor whose address was 2755 Carter avenue, in the city of Detroit.

The trial judge, in commenting upon this situation, stated that there was no showing that either Abraham's attorney or the sheriff of Alcona county knew about the existence of the State Gazetteer in the county clerk's office or ever had access to it. But Judge Dehnke, when asked how he ascertained the residence of the parties, said:

"Well, on checking over my file I find a copy of a letter that I wrote to the sheriff of Wayne county in which I gave him certain addresses. I probably checked the conveyances in the register's office to see if the deed or mortgage gave the address; and also the State Gazetteer that was in the county clerk's office at that time."

In *Wolf* v. *McDonald*, 244 Mich. 59, 63, the court said:

"The statute contemplates that one who purchases a tax title must make an honest and diligent effort to ascertain the whereabouts of the owner in order that he may be served with notice of the sale and have an opportunity to redeem."

Also, the following was said in *Winters* v. *Cook*, 140 Mich. 483, 487:

"It (the statute) imposes upon the purchaser the obligation of good faith, and an earnest effort to

ascertain the owner and his whereabouts, and an honest attempt to give him actual notice and the statutory opportunity."

We are obliged to apply the rule of diligence and are forced to conclude that there was a lack of diligence in the instant matter and that Abraham has not perfected his tax title as is required by the statute. See *Gustin* v. *Bonehead Hunting Club,* 280 Mich. 296.

This brings us to the remaining question stated by appellee as follows:

"Was it necessary that plaintiff deposit the amount of money set forth in the notice for reconveyance with the clerk of the court before filing an action in ejectment where the land had been sold on State tax land deed?"

Appellee contends that the ruling in *Powell* v. *Pierce,* 168 Mich. 427, requires the holder of the original title to redeem in order to maintain ejectment, even though the tax title purchaser has failed to perfect his title by giving the necessary statutory notice. See, also, *Closser* v. *McBride,* 182 Mich. 594. Appellant argues that the rule of the *Powell Case, supra,* is not applicable in view of 1 Comp. Laws 1929, § 3466 (Stat. Ann. § 7.119), which provides:

"The right to recover possession of any land * * * by any person claiming through or under any deed executed by the auditor general or by virtue of a certificate of purchase issued under the provisions of this act shall be forever barred * * * by failure of such tax title purchaser, his heirs or assigns, to give the notice or notices required by this act for a reconveyance of the premises within the above specified period of five years. In case of such failure to give the required notice for reconveyance within the period of five years from the date such purchaser, his

heirs or assigns shall become entitled to a tax deed to be issued by the auditor general, the person or persons claiming title under tax deed or certificate of purchase shall be forever barred from asserting such title or claiming a lien on the land by reason of such tax purchase.''

This section was not involved in the *Powell Case* inasmuch as defendant's grantor there acquired his tax deeds prior to the enactment of the statute in 1907 (Act No. 58, Pub. Acts 1907). *Holmes* v. *Soule,* 180 Mich. 526. However, appellant points out that defendant Abraham acquired his tax deeds in 1927, and that more than five years elapsed between that time and the commencement of the present action. He contends, therefore, that appellee has no ''right to recover possession'' of the lands in question and is ''barred from asserting'' title under his tax deeds. Assuming this to be true, it does not follow that the requirement of redemption has been abrogated by section 3466. Defendant is in actual possession of the lands in question and there is no evidence that either plaintiff or any of her predecessors in title was ousted by reason of defendant's entry. Plaintiff must therefore succeed, if at all, upon the strength of her own title and not upon the weakness of that of defendant. See *Brown* v. *Eckle,* 259 Mich. 551, and cases therein cited.

As stated in *White* v. *Dunsmore,* 167 Mich. 542, foreclosure by the State of its tax lien destroys the original or government chain of title; and subsequent sale by the State of its title to a third party at most confers upon the holder of the original title the privilege of redeeming from the tax sale and thus becoming invested with the title of the State. See, also, *Grand Rapids Trust Co.* v. *Doctor,* 222 Mich. 248. Moreover, there is nothing in section 3466, which enlarges plaintiff's possessory rights. There-

fore, until redemption is made, plaintiff does not have sufficient title to enable her to eject defendant even though the latter may be barred from asserting the title of his tax deed or claiming a lien on the land. *Powell* v. *Pierce* and *White* v. *Dunsmore, supra.*

In this action of ejectment, plaintiff should not prevail for the reasons as herein given and the judgment for defendant, entered by the circuit court, should be affirmed, with costs to appellee.